2008 ME 56

**Leslie (Padolko) SMITH**

v.

**Victor PADOLKO.**

Supreme Judicial Court of Maine.

Submitted on Briefs: Jan. 24, 2008.

Decided: March 20, 2008.

---

Pamela S. Holmes, Esq. McGarry & Holmes, LLC, Wells, ME, for Leslie (Padoiko) Smith.

D. Michael Noonan, Esq. Shaheen & Gordon, Dover, NH, for Victor Padoiko.

Panel: CLIFFORD, ALEXANDER, SILVER, MEAD, and GORMAN, JJ.

SILVER, J.

[¶ 1] Leslie Smith appeals from a final order modifying her divorce judgment and holding her in contempt entered in the District Court (York, *J.D. Kennedy, J.*).

Smith contends that the court abused its discretion in awarding primary residence of the two minor children to their father, Victor Padolko, the non-residential parent. She also contends that the court erred in awarding attorney fees to Padolko.[1] We affirm the trial court's judgment.

## I. BACKGROUND

[¶ 2] Victor Padolko and Leslie Smith were married in 1997. Together, they have two minor children. The Padolkos divorced in 2003. Pursuant to the divorce judgment, primary residence of the children was awarded to Smith with a specified contact schedule for Padolko. The judgment also allocated shared parental rights and responsibilities to the parties. Finally, the judgment included the statutorily required provision that a parent who intends to relocate the residence of the children must provide thirty days actual notice to the other parent before the intended relocation.

[¶ 3] In 2002 Smith was diagnosed with Crohn's disease, a serious condition that is exacerbated by stress. Her relationship with her parents has been a significant source of stress in her life. As a result, Smith began to consider relocating with her then fiance (now husband) and the children to start a new life away from the stress created by her parents.

[¶ 4] On February 15, 2006, Padolko received a letter from Smith dated February 10, 2006, providing notice of her move with the children to Ohio. Smith moved to Ohio with her fiance and the two children on February 16–17, 2006. In March, Padolko filed a contempt motion and then a motion to modify divorce judgment to change primary physical residence seeking primary physical residence of the two children.

[¶ 5] In April 2006, Padolko stated in a telephone conversation to Smith, "I hope the stress of coming to Maine kills you so I won't have to pay you." The next day, Smith obtained an ex parte temporary protection order from the Court of Common Pleas, Stark County, Ohio, on behalf of herself and the children. As a result, Padolko was prohibited from having any contact with Smith or with his children. The Maine trial court held a Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA) telephone conference with the Ohio court and concurred that Maine was the children's home state under the UCCJEA, and the Ohio court vacated the protection order as to the children in May 2006. The trial court also appointed a guardian ad litem (GAL) for the children. The GAL recommended that primary residence be awarded to Padolko because she felt Smith had actively sought to undermine the children's relationship with the father and because it was in the children's best interests to have a strong bond with both parents.

[¶ 6] At the hearing, Padolko testified that Smith did not seriously consult him about a planned move out of state and that he told her he did not want her moving any farther away than two hours from him. In early February, Smith told him that she planned to visit Ohio, and if they liked it, to move there at the end of the school year. Smith testified that she had purchased round-trip tickets to Ohio and had no intention of staying there permanently. She became ill while in Ohio and couldn't fly because of her medical condition. She learned it would take four weeks for her medical condition to improve and enable her to fly so she decided to enroll their son in school in Ohio. The trial court found

---

1. None of the mother's other arguments merit our discussion.

her testimony about the timing of the move to be false.

[¶ 7] When asked about Padolko's threatening phone call to her that led to the Ohio protection from abuse order, Smith testified that because Padolko knew that stress triggers her disease and makes her extremely ill, she felt that he could physically hurt her. She also testified that she had never heard him so mad before. The court found her testimony regarding this incident to be credible and therefore found that she did not intentionally and willfully misuse the protection from abuse process.

[¶ 8] The trial court awarded Padolko primary residence and also awarded the parties shared parental rights once the Ohio restraining order was removed. In addition, the court outlined a specific visitation schedule for the children to visit Smith during the summer and holidays. Finally, the court granted Padolko's motion for contempt and ordered Smith to partially reimburse his attorney fees in the amount of $10,000. Smith then filed this appeal.

## II. DISCUSSION

### A. Primary Residence

[¶ 9] Smith contends that the court abused its discretion in changing the primary residence of the minor children to Padolko. She further contends that since the court found her testimony about Padolko's history of domestic violence to be credible, the court committed reversible error for failing to adequately address this issue when it awarded Padolko primary residence. We review an order on a post-divorce motion for abuse of discretion or other error of law. *Boutin v. Dionne*, 458 A.2d 426, 426 (Me.1983) (citing *Ziehm v. Ziehm*, 433 A.2d 725, 730 (Me.1981)). On a post-judgment motion to modify a di-

vorce decree, an abuse of discretion will only be found if the award is "plainly and unmistakably an injustice that is so apparent as to be instantly visible without argument." Levy, *Maine Family Law Pleadings and Procedure* § 4.13.3 at 61 (5th ed.) (citing *Capron v. Capron*, 403 A.2d 1217, 1218 (Me.1979)).

[¶ 10] Title 19–A M.R.S. § 1657 (2007) governs the modification of parental rights and responsibilities as follows:

**1. Modification or termination.** An order for parental rights and responsibilities may be modified or terminated as circumstances require:

    **A.** Upon the petition of one or both of the parents[.]

    . . . .

**2. Change in circumstances.** In reviewing a motion for modification or termination filed under chapter 59 or section 1653 or 1655, the following constitute a substantial change in circumstances:

    . . . .

    **A–2.** The receipt of notice of the intended relocation of the child as required under section 1653, subsection 14; or

    **B.** A finding by the court that domestic or family violence has occurred since the last determination of primary residence.

A court may award primary residence of a minor child or parent-child contact with a minor child to a parent who has committed domestic abuse *only* if the court finds that contact between the parent and child is in the best interest of the child and that adequate provision for the safety of the child and the parent who is a victim of domestic abuse can be made.

(Emphasis added.) 19–A M.R.S. § 1653(6)(A) (2007).

[¶ 11] We have "long held that only a 'substantial change' in circumstances since the entry of the most recent decree can justify the modification of the decree, and that the overriding consideration whenever a proposed modification is sought is the best interest of the minor children." Levy, *Maine Family Law Parental Rights and Responsibilities* § 6.6.1 at 52 (5th ed.) (citing *Philbrick v. Cummings,* 534 A.2d 1307, 1308 (Me.1987)). "In determining whether there has been a substantial change in circumstances ... the inquiry is as follows: First, whether since the prior order there has occurred a change in circumstances sufficiently substantial in its effect upon the children's best interests to justify a modification; and second, if so, how should the custody arrangement be modified in furtherance of the children's best interests." *Id.* at 6–55 (citing *Jarvis v. Jarvis,* 2003 ME 53, ¶ 29, 832 A.2d 775, 781).

[¶ 12] Section 1653(3) provides, in relevant part, the best interest factors as follows:

> **3. Best interest of child.** The court, in making an award of parental rights and responsibilities with respect to a child, shall apply the standard of the best interest of the child. In making decisions regarding the child's residence and parent-child contact, the court shall consider as primary the safety and well-being of the child. In applying this standard, the court shall consider the following factors:
>
> . . . .
>
> **H.** The capacity of each parent to allow and encourage frequent and continuing contact between the child and other parent, including physical access;
>
> **I.** The capacity of each parent to cooperate or to learn to cooperate in child care;

> **J.** Methods for assisting parental cooperation and resolving disputes and each parent's willingness to use those methods;
>
> **K.** The effect on the child if one parent has sole authority over the child's upbringing. . . .

[¶ 13] It is undisputed that Smith's decision to move the children to Ohio constituted a "substantial change in circumstances" that could result in a modification of parental rights and responsibilities pursuant to 19–A M.R.S. § 1657(2)(2007). The trial court clearly addressed the impact of this relocation in its decision, when it discussed the best interest of the children. It did not discuss the significance of the threatening phone message other than to find that Smith's obtaining a protection from abuse order against Padolko was not a willful abuse of the protection order process.

[¶ 14] The factual findings of the divorce court will not be set aside on appeal unless they are clearly erroneous because the divorce court is in a superior position to judge the credibility of the witnesses. Levy, *Maine Family Law Parental Rights and Responsibilities* § 4.13.3 at 60 (5th ed.) (citing M.R. Civ. P. 52(a); *Lagarde v. Lagarde,* 437 A.2d 872, 875 (Me.1981); *Mattson v. Mattson,* 376 A.2d 473, 476 (Me.1977)). The court did not make a finding that the threatening phone call constituted an episode of domestic violence pursuant to 19–A M.R.S. § 1657(2)(B). The court did mention a single episode of domestic violence by the father in 2002, which occurred before the parties divorced, demonstrating that it considered the issue of safety while considering the best interests of the children.

[¶ 15] Therefore, the court properly applied "all the factors listed in [19–A M.R.S. § 1653(3), (6)] in making its find-

ings and decisions" and stated "[w]hile virtually all those factors had to be considered in this case, the court in particular deems factors H through K in § 1653(3) as determinative in making its orders." The record reflects that the court accorded significant weight to Smith's unilateral decision to move the children to Ohio without Padolko's knowledge or consent, and her subsequent actions to prevent him from having a meaningful relationship with the children, in fashioning its new custody arrangement in their best interests. *See Jarvis v. Jarvis*, 2003 ME 53, ¶ 29, 832 A.2d 775, 781.

[¶ 16]  Accordingly, the trial court did not abuse its discretion in awarding primary residence to Padolko.

B.  Attorney Fees

[¶ 17]  Smith contends that the trial court abused its discretion in awarding attorney fees to Padolko because she did not actually violate the relocation provision of the divorce judgment, and that the court failed to consider the impact her permanent disability has on her ability to pay attorney fees.  We review an award of "spousal support, child support, and attorney fees for an abuse of discretion." *Payne v. Payne*, 2006 ME 73, ¶ 7, 899 A.2d 793, 795 (citing *Urquhart v. Urquhart*, 2004 ME 103, ¶¶ 3, 6, 854 A.2d 193, 194–95).  We have held that "in deciding whether to award attorney fees and in deciding what amount will be awarded the trial court has discretion to consider all factors that reasonably bear on the fairness and justness of the award." *Rosen v. Rosen*, 651 A.2d 335, 337 (Me.1994).  In *Rosen*, we held that the trial court is not limited to considering the parties' relative financial positions, but could also consider the parties' conduct contributing to the need for the filing of the motion.  651 A.2d at 336.  Whether the need for the post-

judgment proceeding arose out of a party's failure to abide by an existing order may also factor into the court's consideration. *See Bartlett v. Anderson*, 2005 ME 10, ¶ 21, 866 A.2d 829, 835.

[¶ 18]  The trial court's order contains the following language about the award of attorney fees:

Plaintiff is ordered to partially reimburse Defendant's attorneys fees in the amount of $10,000.  Plaintiff may take a credit against any amounts owed to or on her behalf, including the residence mortgage obligation.  However, *in light of Plaintiff's financial circumstances*, any balance due above that amount is suspended.

(Emphasis added.)

[¶ 19]  The order's plain language makes clear that Smith's contention that the court failed to take her financial situation into account is without merit.  Further, it is undisputed that Smith's actions in moving the children to Ohio compelled Padolko to file a contempt motion for failure to comply with the parental rights provisions of the divorce judgment, which the court found by clear and convincing evidence.  The trial court acted within the bounds of its discretion to consider Smith's financial situation in addition to the role she played in failing to abide by an existing court order and her conduct contributing to the need for the filing of the motion, among other factors. *See Bartlett*, 2005 ME 10, ¶ 21, 866 A.2d at 835; *Rosen*, 651 A.2d at 336.  Accordingly, the trial court did not abuse its discretion in awarding attorney fees to Padolko.

The entry is:

Judgment affirmed.