2012 ME 67

**Paul S. DOUGLAS**

v.

**Lisa M. DOUGLAS.**

Supreme Judicial Court of Maine.

Argued: Feb. 16, 2012.
Decided: May 22, 2012.

Christopher K. MacLean, Esq., Elliott & MacLean, LLP (orally), Camden, for appellant Lisa M. Douglas.

Eric B. Morse, Esq., Strout & Payson, P.A. (orally), Rockland, for appellee Paul S. Douglas.

Panel: SAUFLEY, C.J., and ALEXANDER, LEVY, SILVER, MEAD, GORMAN, and JABAR, JJ.

JABAR, J.

[¶ 1] Lisa M. Douglas appeals from the District Court's (Rockland, *Tucker, J.*) order granting Paul S. Douglas's motion to modify the couple's 2008 divorce judgment. Lisa argues that the court abused its discretion in modifying the divorce judgment to permit supervised, therapeutic reunification of the couple's child with Paul and that the court erred in finding the guardian ad litem fees reasonable. We affirm the judgment granting the motion to modify but vacate the judgment regarding the guardian ad litem fees.

## I. BACKGROUND

[¶ 2] Lisa and Paul Douglas were married on August 23, 2003. The couple had a son born on March 29, 2004. Lisa filed a complaint for divorce on August 24, 2007. On April 14, 2008, the court held a contested divorce hearing, and it issued a divorce judgment on April 24, 2008.

[¶ 3] The court awarded Lisa sole parental rights and responsibilities of the couple's son because of the caustic relationship that existed between the parties, Paul's authoritarian and controlling behavior during the marital relationship, and an allegation that Paul had perpetrated sexual abuse upon the couple's child. The allegations of sexual abuse culminated in Paul being charged with a Class B unlawful sexual contact charge and the imposition of bail conditions that prevented Paul from having any contact with his son. The court did leave open the possibility of reasonable visitation in the future:

> At the present time, reasonable visitation between [the child] and his father cannot be determined, and therefore none is ordered. After the pending criminal charges are resolved, one way or the other, and if there are other changes in circumstances, the parties may petition the court to amend this judgment to provide for reasonable visitation. [The child] is still young. There is potential for reunification after the current crisis has been resolved.

Less than one month after the court issued the divorce judgment, the unlawful sexual contact charge filed against Paul was dismissed, and the accompanying "no contact" bail conditions were discharged. Paul filed an initial motion to modify the divorce judgment on May 23, 2008, but he voluntarily withdrew the motion on October 7, 2008.

[¶ 4] A year later, on October 29, 2009, Paul filed the "Emergency Motion to Modify" that became the subject of this appeal. In the motion, Paul alleged that because the criminal charges had been dismissed and because he had undergone "an extensive psychosexual/psychological examination and risk assessment," there was a substantial change in circumstances; therefore, he requested that the divorce judgment be modified to allow contact with his son. Following the divorce judgment in April 2008, there had been no contact,

incidental or otherwise, between Paul and his son.

[¶ 5] At the hearing, the court received testimony from the guardian ad litem (GAL), the child's current counselor and therapist, the child's former therapist, and Paul.

[¶ 6] The GAL testified that her primary focus during the pendency of Paul's motion was to determine whether it would be safe to initiate contact between Paul and his son. To make that determination, the GAL recommended that Paul needed to take certain steps, in terms of examination and counseling, to ensure it would be safe to begin a reunification effort. As part of this process, Paul participated in an evaluation with the Spurwink Clinic and sought counseling. Since the fall of 2010, Paul had been attending therapy sessions. Paul's therapist reported to the GAL that Paul had been "very committed" to therapy and felt that Paul's feelings of "hopelessness, rage, [and] despair" were "contained." Paul's therapist also relayed to the GAL that he had no concerns about the prospect of starting reunification efforts between Paul and his son.

[¶ 7] The GAL also testified that, after the 2008 divorce judgment, Paul had fathered another son with a different woman. Paul's therapist, who had an opportunity to observe Paul with his younger son at one of their counseling sessions, relayed to the GAL that Paul appeared to maintain a normal, appropriate relationship with his younger son. In September 2010, Paul participated, along with Lisa and their son, in an evaluation at the Spurwink Clinic. The purpose of the evaluation was to ascertain whether there was any truth to the sexual abuse allegations that guided the court's 2008 divorce judgment. Through interviews with the child and Paul, the Spurwink evaluators concluded that they could not substantiate any allegation that Paul had sexually abused his son.

[¶ 8] The GAL stated that since she began working with him in the fall of 2010, Paul had complied with all of her recommendations, and she sensed that Paul was enthusiastic about his therapy and the possibility of reunification. Near the conclusion of the modification hearing, the GAL opined, on direct inquiry from the court, that there had been a substantial change in circumstances since the time of the divorce judgment based on the child's age and development, the significant amount of time that Paul and Lisa had had to move on from the divorce, the parties' independent participation in counseling, and the child's continuing involvement with his own therapist.

[¶ 9] The court issued its modification order approximately one week after the hearing on May 9, 2011. The court's order outlines in great detail the nature of the gradual, therapeutic reunification plan that requires Paul to initiate the process through his therapist, who would share his recommendations for the structure of the contact with Lisa, Lisa's attorney, and the child's therapist. The court also highlighted the limited nature of the reunification plan: "The parties are ordered to take reasonable steps to prepare [the child] for a graduated and therapeutically sound reunification effort, with the goal to be a once monthly supervised visit with [Paul]. . . ."

[¶ 10] Between the time of the hearing and the court's order, the GAL filed a fee affidavit with the court requesting that it apportion her outstanding fee of $2400, from a total fee of $4900, between Lisa and Paul. The total fee included a "[f]ull day hearing flat fee" of $1500 and $3400 for her thirty-four hours of "[t]otal time spent" on the case, less the $2500 retainer fee the parties had already paid the GAL. Because the court acted on the GAL's fee request immediately, neither Lisa nor Paul had the opportunity to respond to the

GAL's requested fees. In the modification order, the court stated that the GAL's "services were reasonable and necessary, and her charges usual and customary." The court ordered Lisa and Paul to each pay $1200 of the outstanding balance.

[¶ 11] Upon receiving the Court's order, Lisa moved for findings of fact and conclusions of law pursuant to M.R. Civ. P. 52(a). Additionally, Lisa's Rule 52 motion requested the court to "identify the facts" used to find the GAL's $4900 fee "reasonable and necessary" in circumstances where the GAL did not author a final written report or submit an itemized statement of the services she provided.

[¶ 12] The court responded to Lisa's Rule 52 motion on June 3, 2011. In the order, the court addressed the visitation issue but did not address the GAL fee issue. The court stated:

> The finding of a change of circumstances is based on several facts: [The child's] change in age from 3 to 7 years old; criminal charges have been dropped against [Paul] based on [the child's] testimony; criminal bail conditions of 'no contact' have been dropped; the immediate crisis of the divorce proceeding is concluded, and [Lisa] has established a new stable household in Portland, away from the Rockland area; [Paul] has had another child since [his last interaction with his son] and is allowed visitation and contact with this new child; [and Paul] has engaged in clinical therapy with [his therapist] in Augusta.

Following the June 2011 court order on Lisa's Rule 52 motion, Lisa filed a timely notice of appeal on June 22, 2011.

## II. DISCUSSION

■ [¶ 13] The Court "review[s] an order on a post-divorce motion for abuse of discretion or other error of law." *Smith v. Padolko*, 2008 ME 56, ¶ 9, 955 A.2d 740.

A. Modification of Decree

■ [¶ 14] In the context of a motion to modify a divorce decree brought pursuant to 19–A M.R.S. § 1657(1)(A) (2011), we have consistently held that the trial court must engage in a two-fold inquiry: "First, whether since the prior order there has occurred a change in circumstances sufficiently substantial in its effect upon the children's best interests to justify a modification; and second, if so, how should the custody arrangement be modified in furtherance of the children's best interests." *Smith*, 2008 ME 56, ¶ 11, 955 A.2d 740 (quotation marks omitted).

[¶ 15] Lisa's primary argument is not that the court erred or abused its discretion in finding a substantial change in circumstances, but instead that the court failed to "articulate how any of the changes related to the best interest factors in 19–A M.R.S.A. § 1653(3) [ (2011) ]." *See Smith*, 2008 ME 56, ¶ 11, 955 A.2d 740 ("[T]he overriding consideration whenever a proposed modification is sought is the best interest of the minor children").

[¶ 16] Although the District Court's order did not specifically address how the various substantial changes had affected the child, it is clear that the court did consider many of the section 1653(3) best interest factors by noting in its findings (1) that the child had nearly doubled in age since the issue of the 2008 divorce decree and Paul's last contact with him, *see* 19–A M.R.S. § 1653(3)(A); (2) that Lisa, because of the parties' caustic relationship, would be unlikely to work with Paul to encourage or allow him contact with their child, *see id.* § 1653(3)(H); (3) that the method of gradual, therapeutic, and supervised contact facilitated by the various therapists and attorneys involved would permit the parties to help resolve disputes between themselves and those disputes that relate to their son's care and safety,

*see id.* § 1653(3)(J), (S); (4) that Paul, with the help of the GAL, had undertaken counseling to help understand how his past behavior and impulsive actions had perhaps exacerbated the emotional costs of the divorce and precipitated the events that led to allegations of sexual abuse, *see id.* § 1653(3)(N); and most importantly, (5) that the allegations of sexual abuse against Paul, which served as the driving force behind the 2008 divorce decree denying him visitation, had long since been resolved, *see id.* § 1653(3)(M), (Q).

[¶ 17] With the primary impediments to allowing contact between Paul and his son resolved, most notably the allegations of sexual abuse, which were paramount during the initial divorce proceeding, the court determined that it would be in the child's best interest to begin limited, therapeutic reunification. The Legislature has specifically expressed the policy preference that, "except when a court determines that the best interest of a child would not be served, it is the public policy of this State to assure minor children of frequent and continuing contact with *both* parents . . . and to encourage parents to share the rights and responsibilities of child rearing." 19–A M.R.S. § 1653(1)(C) (2011) (emphasis added).

[¶ 18] The court did consider many of the best interest factors provided in section 1653(3), and the court's determination is supported by competent evidence in the record. There was sufficient evidence to establish a substantial change of circumstances justifying a modification of the parties' divorce decree. *See Smith,* 2008 ME 56, ¶ 11, 955 A.2d 740. The court's decision to modify the 2008 divorce decree to allow Paul limited, therapeutic, and closely monitored contact is affirmed.

## B. Guardian ad Litem Fees

[¶ 19] On January 14, 2010, the court (*Mathews, M.*) issued an order ap-pointing the GAL. The order required immediate payment of a $2500 fee to the GAL, with the parties each to pay one-half, $1250, of the mandated fee.

[¶ 20] The statute governing GAL appointments mandates that "[a]t the time of appointment, the court shall specify the guardian ad litem's length of appointment, duties and fee arrangements." 19–A M.R.S. § 1507(1) (2011). However, other than the requirement for immediate payment of $2500, the order appointing the GAL did not include a provision regarding the rates or fees to be charged by the GAL, a cap on the fees that might be charged, or any indication as to whether additional fees above the $2500 fee already assessed might be charged.

[¶ 21] Over the next year, the parties proceeded to develop their evidence, and the GAL interviewed a number of potential witnesses. The matter came on for a final hearing on May 3, 2011. The evidence offered by the GAL focused on her recommendations that Paul be permitted some contact with his son. Neither the GAL nor any of the parties raised any question or presented any evidence regarding the GAL's fees or rates or the reasonableness of the charges.

[¶ 22] At the close of the hearing, the court took the entire matter under advisement. Two days later, on May 5, 2011, the GAL filed an unattested document stating that she had performed thirty-four hours of work and seeking payment for an additional $2400 in fees. Except for a flat fee of $1500, which the GAL attributed to her participation at the one-day hearing, the document submitted by the GAL did not otherwise itemize the work done to justify the additional fees. It provided no information by which the court, or the parties, could evaluate the reasonableness or necessity of the fees, totaling $4900, to which the GAL claimed to be entitled. The par-

ties were never afforded an opportunity to object to or comment on the reasonableness or necessity of the additional $2400 in fees sought by the GAL.

[¶ 23] In its May 9, 2011, judgment, the court directed the parties to split the additional $2400 GAL fee. The court found that "the guardian ad litem's services were reasonable and necessary," and that her charges, including the $1500 flat fee for attending the one-day hearing, were "usual and customary."

[¶ 24] Although the statute, 19–A M.R.S. § 1507(7) (2011), requires that, in determining responsibility for payment of GAL fees, the court consider the parties' income, assets, and other factors, the court's opinion gives no indication that the court considered these statutory factors in concluding that the parties share the expenses equally. At oral argument, responding to a question from this Court, counsel for Lisa advised that, at the time the additional fees were assessed, Lisa was of limited means and receiving MaineCare assistance for her and her son.

[¶ 25] In its response to the motion for additional findings, the court addressed some issues regarding its modification order but did not address the request for findings regarding the order for the GAL fees.

▓ [¶ 26] When a court has entered its judgment, and a party has, thereafter, filed a motion for findings pursuant to M.R. Civ. P. 52(a), the court must make findings sufficient to support its judgment. *Bayley v. Bayley*, 602 A.2d 1152, 1153–54 (Me.1992). Those explicit findings must be based on the evidence in the record and must be sufficient to support the result, *Jarvis v. Jarvis*, 2003 ME 53, ¶ 18, 832 A.2d 775, and to inform the parties and any reviewing court of the factual and legal basis for the trial court's decision, *Bayley*, 602 A.2d at 1153–54; *see also*

*State v. Greenleaf*, 2004 ME 149, ¶ 29, 863 A.2d 877.

▓ [¶ 27] On our review of an appeal from a judgment when a motion for findings has been filed and denied, we cannot infer findings from the evidence in the record. *Bayley*, 602 A.2d at 1153–54. Instead, the court's decision must include sufficient findings to support its result or the order must be vacated. *Id.; see also Greenleaf*, 2004 ME 149, ¶ 29, 863 A.2d 877. In a case such as this, when a court is ordering a party of limited means to make a substantial payment in a proceeding initiated by the other party based on an objective that she opposed, findings should address the party's ability to pay the required sums and the basis for and reasonableness of the fees claimed. *See* 19–A M.R.S. § 1507(7).

[¶ 28] We vacate the order as it pertains to the GAL's fees and remand for the court to reconsider the amount of the fees and how the fees should be apportioned between the parties.

The entry is:

The portion of the court's order approving the guardian ad litem fees is vacated and remanded to the District Court for further proceedings consistent with this opinion. The judgment is affirmed in all other respects.