MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:     2013 ME 101
Docket:       Pen-13-137
Submitted
 On Briefs:   September 26, 2013
Decided:      November 14, 2013

Panel:        SAUFLEY, C.J., and ALEXANDER, SILVER, MEAD, GORMAN, and JABAR, JJ.

CHAD E. BULKLEY

v.

BRITTANY A. BULKLEY

JABAR, J.

[¶1]  Brittany A. Bulkley appeals from a judgment entered in the District Court (Bangor, *Jordan, M.*) granting Chad E. Bulkley's motion to modify the parental rights and responsibilities established in the parties' 2010 divorce judgment.  Brittany argues that the court abused its discretion in granting Chad primary residence of their minor child because it erred in considering the parties' respective financial situations in determining the child's best interest.  Although we agree with Brittany that courts should not rely primarily on the parents' financial situations in assessing the child's best interest, we conclude that, under appropriate circumstances, inquiry into parents' financial situations may be relevant to the child's best interest.  Accordingly, we affirm the judgment.

## I. BACKGROUND

[¶2]  Chad and Brittany Bulkley were married in August 2007.  Their son was born in October 2008.  Chad filed a complaint for divorce on January 19, 2010, and on April 21, 2010, the court held an uncontested hearing. On April 30, 2010, the court issued its divorce judgment awarding the parents shared parental rights and responsibilities of the child and granting Brittany primary residence of the child.  Chad was awarded the right to have contact with the child "at all reasonable times," and was ordered to pay weekly child support.

[¶3]  Since the entry of the divorce judgment, Brittany has moved with the child at least five separate times, moving within the states of Washington, Kentucky, and Illinois.  Additionally, beginning in December 2010, Brittany and her boyfriend at the time—now her fiancé—began living in the cab of his employer-owned tractor-trailer truck.  Brittany brought the parties' then two-year-old child, in addition to the couple's dog and cat, to live in the truck as well.

[¶4]  For the next two months, the two-year-old child lived in the truck.  The couple would stop every few hours to allow the child to stretch and play.  The child sat in the front seat while the truck was in transit, and when the child napped, he would lie, unrestrained, with Brittany in the back of the truck's cab.  At the time, Brittany did not believe that living in the truck would be detrimental to the child

but thought it would be a good experience for the two-year-old child to travel the country as she did with her own father when she was a teenager. While living in the truck, the child became sick on numerous occasions, including once with a fever and once with a stomach virus.

[¶5] From January 2010 to February 2011, Chad saw his child only once. Chad's contact with his child was limited in part by his own work schedule. Chad was employed with an oil-rig supply company in the Gulf of Mexico, which required him to travel to Louisiana for a month at a time. When Chad was not working in the Gulf, he lived in Bangor with his new wife. Chad attributed a large portion of his limited contact with the child to Brittany's unstable living conditions after the divorce.

[¶6] In February 2011, Chad was home in Bangor for two weeks, and the parties agreed that the child would stay with him. When the two-week stay ended, Chad decided unilaterally to keep the child and not return him to Brittany's care. Chad kept the child partly out of concern for his safety and well-being living in the truck. In November 2011, Brittany and her fiancé moved out of the truck and temporarily settled in Kentucky. On November 10, 2011, Brittany filed a motion for contempt against Chad for violating the divorce judgment's primary-residence provision. On December 12, 2011, Chad filed a motion to modify the divorce judgment, asserting that the child had not had a stable living environment

4

following the divorce and that returning him to a living arrangement in the truck could have significant negative effects on the child's well-being. Brittany filed a counter-motion to modify the divorce judgment and requested that restrictions be placed on Chad's rights of contact with the child.

[¶7] On January 17, 2012, the court (*Gunther, J.*) ordered that the child be returned to Brittany until an interim order of residence could be entered. At that time, Brittany had moved with her fiancé to Illinois. On January 24, 2012, the court entered an interim schedule and, by agreement of the parties, mandated that the child would not live in the truck during the pendency of the matter and required Brittany to provide Chad with weekly confirmation of the child's living arrangements in Illinois.

[¶8] From January 2012 until the hearing in December 2012,[1] the child lived with Brittany and her fiancé in Illinois where he was enrolled in a preschool program. Several times during that period, Brittany did not provide Chad with proof of the child's living arrangements and had difficulty providing Chad with regular contact with the child. Chad did not visit the child in Illinois during the time the child was in Brittany's care.

---

[1] The hearing on the parties' motions to modify was originally set for June 28, 2012. On June 20, 2012, Brittany moved to continue the hearing, as she was required to remain on bed rest for a medical issue related to pregnancy. Over Chad's objection, the court granted the motion to continue. It was not until September 13, 2012, that the court rescheduled the hearing for December 14, 2012.

[¶9]  On December 14, 2012, the court held a hearing on the parties' motions.  The parties, their respective significant others, and several family members testified.  The court granted Chad's motion to modify and awarded him primary residence of the child based on what it determined was in the best interest of the child.  *See* 19-A M.R.S. § 1653(3) (2012).  On January 28, 2013, the court entered its written judgment, and Brittany timely appealed.  *See* M.R. App. P. 2(b)(3).

## II.  DISCUSSION

[¶10]  "The trial court is afforded broad discretion in determining the custody and residence of minor children."  *Akers v. Akers*, 2012 ME 75, ¶ 2, 44 A.3d 311.  We therefore "review the court's decision awarding primary residence upon a motion to modify a divorce judgment for an abuse of discretion" and its "factual findings . . . for clear error."  *Id.*

[¶11]  In determining whether a modification is warranted pursuant to 19-A M.R.S. § 1657(1)(A) and (2) (2012), the trial court engages in a two-step inquiry: "First, whether since the prior order there has occurred a change in circumstances sufficiently substantial in its effect upon the child[]'s best interest[] to justify a modification; and second, if so, how should the custody arrangement be modified in furtherance of the child[]'s best interest[]."  *Smith,* 2008 ME 56, ¶ 11, 955 A.2d 740 (quotation marks omitted).

[¶12]  Brittany contends that the court abused its discretion in modifying the divorce judgment when it erroneously considered the parties' financial situations in determining the best interest of the child.  Brittany relies on our decision in *Adoption of Tobias D.,* 2012 ME 45, ¶ 22, 40 A.3d 990, to argue that a parent's socioeconomic status is irrelevant to the child's best interest.  However, our holding in *Tobias D*. was much more limited than Brittany's assertion.  In our decision, which involved the child protection statute, 22 M.R.S. § 4055 (2012), we stated:

> Socioeconomic status or a finding that a parent is less financially stable than potential guardians is not the type of finding that renders a parent unfit as a matter of law *unless it is also determined that he is unable or unwilling to ensure that the child's basic needs are met.*

*Id.* ¶ 22 (emphasis added).  In the case before us, although the trial court determined what living arrangement would be in the best interest of the child going forward, *see* 19-A M.R.S. § 1653(3), it also considered whether Brittany's financial circumstances, and the choices she made concerning those circumstances, did negatively affect the child's basic needs.

[¶13]  In determining a child's best interest, the trial court is asked to think "as a wise, affectionate and careful parent."  *Rodrigue v. Brewer*, 667 A.2d 605, 606 (Me. 1995) (quotation marks omitted).  Section 1653(3) affords the trial court significant latitude in making such determinations, so long as a child's safety and

well-being are of the court's primary concern. *See Kelley v. Snow*, 2009 ME 128, ¶ 15, 984 A.2d 1281 ("A child's safety and well-being are a court's primary consideration when determining the best interest of children . . . .").

[¶14] To assist the trial court with its undertaking, the Legislature set forth nineteen separate factors it deemed relevant to a child's best interest. *See* 19-A M.R.S. § 1653(3)(A)-(S). The flexibility of section 1653(3) does not obligate the court to "robotically address[] every statutory factor . . . so long as it is otherwise evident that the court has evaluated the evidence with the best interest factors in mind." *Nadeau v. Nadeau*, 2008 ME 147, ¶ 35, 957 A.2d 108. "The ultimate determination of the weight to be given each factor requires careful consideration by the court" and is done on an individualized, case-by-case basis. *Akers*, 2012 ME 75, ¶ 3, 44 A.3d 311; *Costigan v. Costigan*, 418 A.2d 1144, 1147 (Me. 1980).

[¶15] Here, the trial court did not abuse its discretion in considering the parties' financial situation as relevant to the child's best interest. As the trial court found, a parent's financial situation does have a bearing on statutory factors, such as the adequacy of the child's current living arrangement, *see* 19-A M.R.S. § 1653(3)(D), and the stability of any proposed future living arrangements, *id.* § 1653(3)(E).

8

[¶16]  The trial court found that Brittany's living arrangements after the divorce were continuously unstable.  She testified that she had moved at least five times since the divorce and for a period of time lived in the cab of a truck.  In comparison, the trial court found that Chad had owned a house since 2008 and that he had no intentions of moving.  The court did not abuse its discretion in considering, at least in part, the parties' financial situations to determine which parent offered the more stable living arrangements going forward.

[¶17]  Moreover, 19-A M.R.S. § 1653(3)(N) provides that the trial court has the discretion to consider "[a]ll other factors having a reasonable bearing on the physical and psychological well-being of the child."  Here, the trial court found that the "child's physical and psychological well-being is much more likely to be better residing with [Chad.]"  The trial court had sufficient evidence in the record to find that during the periods in which the child lived with Brittany, the child received less than adequate medical care.  Brittany testified that since the divorce she had not taken the child to see a doctor, except for one trip to the emergency room.  Similarly, the child was five vaccines behind when Chad brought the child to the doctor in February 2011.  Chad also testified that the child had indications of physical developmental issues, which the child's doctor believed resulted from the child's time living in the truck.  Therefore, the court did not abuse its discretion in finding that the financial situations of the parents were relevant to the medical care

that the child received and that it had a "reasonable bearing on the child's safety and well-being." *See* 19-A M.R.S. § 1653(3)(N).

[¶18] Lastly, although Brittany contends that the trial court gave undue weight to the parties' financial situations in its decision, the trial court considered several other factors in deciding to grant Chad primary residence of the child. The evidence in the record supports the court's findings that (1) Chad had a greater capacity to allow and encourage frequent and continuing contact between the child and Brittany; (2) Brittany had made it more difficult for Chad to have contact with the child; and (3) Brittany was motivated, at least in part, by simply wanting to have exclusive possession of the child, and had not always looked out for the child's best interest. *See* 19-A M.R.S. § 1653(3)(B), (F), (H). After reviewing the court's overall assessment of the child's best interest, it is "evident that [it] ha[d] evaluated the evidence with the best interest factors in mind," and therefore the court did not err or abuse its discretion. *See Nadeau*, 2008 ME 147, ¶ 35, 957 A.2d 108.

The entry is:

Judgment affirmed.

**On the briefs:**

Audrey B. Braccio, Esq., Pelletier & Faircloth, Bangor, for appellant Brittany Bulkley

Wayne Doane, Esq., Exeter, for appellee Chad Bulkley

Bangor District Court docket number FM-2010-47
FOR CLERK REFERENCE ONLY