MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:      2016 ME 164
Docket:        Kno-16-57
Submitted
  On Briefs:   September 29, 2016
Decided:       November 8, 2016

Panel:         SAUFLEY, C.J., and ALEXANDER, <u>MEAD</u>, GORMAN, JABAR, and HUMPHREY, JJ.

LINDSAY E. VERITE

v.

ERIC J. VERITE

MEAD, J.

[¶1]　Eric J. Verite appeals from a judgment of the District Court (Rockland, *Worth, J.*) granting Lindsay E. Verite's motion to modify the parties' divorce judgment.　Eric contends that the court (1) erroneously permitted testimony pertaining to Lindsay's plan to relocate the children, and (2) erred by failing to articulate a proper basis for its award of attorney fees and expert fees to Lindsay.　We find no error or abuse of discretion and affirm the judgment.

## I.  BACKGROUND

[¶2]　Eric and Lindsay were married in 2005 and are the parents of three children born in 2005, 2008, and 2010.　The parties were divorced in

2

2011 by a judgment of the District Court (*Westcott, J.*), which awarded them shared parental rights and responsibilities; awarded Lindsay primary residence of the three children and granted Eric rights of contact with the children most weekends and at other designated times; ordered Eric to pay child support and arrearages; entitled Lindsay to the child tax benefits for two of the children and Eric the benefits for one of the children contingent on being current with child support; and divided marital assets and debts.

[¶3]  On October 22, 2014, Eric filed a motion to enforce alleging that Lindsay prevented his contact with the children during two weekends that month.  He sought to enforce the visitation schedule ordered in the divorce judgment and obtain compensatory visitation with the children.  On November 12, 2014, Lindsay filed a motion to modify the divorce judgment seeking, among other things, sole parental rights and responsibilities with respect to the parties' three children.  That same day, the court (*Sparaco, J.*) entered an interim order that granted Lindsay temporary sole parental rights and responsibilities; permitted Eric to have supervised visitation at least two times per week; limited Eric's contact with Lindsay; ordered Eric to undergo psychological and substance abuse evaluations and follow through on any recommendations; and appointed a guardian ad litem.

[¶4]    The court (*Worth, J.*) held a two-day testimonial hearing addressing both pending motions on December 9, 2015, and January 5, 2016, and entered an order on January 27, 2016, denying Eric's motion to enforce and granting Lindsay's motion to modify.   With regard to the motion to enforce, the court found that Lindsay's decisions to withhold visits "were motivated by a reasonable concern for the children's safety and well-being," and in light of Eric's recent OUI charge, prior expression of suicidal ideation, and refusal to engage in counseling, her actions were justified.

[¶5]    Regarding the motion to modify, the court determined that Lindsay had established a substantial change in circumstances warranting modification of the judgment.  The court awarded Lindsay sole parental rights and responsibilities, finding that Eric's communications with Lindsay "reflect an approach to her characterized by manipulation, hostility and demeaning actions and language," and "[a]s a result, effective co-parenting [wa]s not possible at th[at] time."  The court cited Eric's psychological evaluation, which was "suggestive of" a personality disorder that could make it difficult for him to co-parent with Lindsay, and found "that he may not be a person who will benefit substantially from therapy."  The court also found that Eric committed domestic abuse against Lindsay during an incident on October 31, 2014, when

4

he unexpectedly showed up at the children's school, knowing that it was not his day to have the children. When Lindsay arrived at the school, she found an adult blocking Eric's car from leaving the parking lot. Lindsay approached Eric, and he grabbed her and wrestled her away from his car in front of their two younger children. Finally, the court found that Eric "willfully misused the [protection from abuse] process in order to gain tactical advantage in the escalating parental rights dispute" by falsely describing the events of the incident at the school.

[¶6] The court gave Lindsay sole discretion as to the "frequency and duration of contact" between Eric and the children and as to whether the contact requires supervision. In its discussion of parent/child contact, the court found that Lindsay and her husband were considering a temporary move to Switzerland in August 2016 because her husband may be offered a teaching position there. The court noted that although this topic was not pleaded in either party's motion, "[t]he parties litigated this issue . . . by implicit agreement." Finding that the children would "benefit substantially" from attending a school abroad and that it would provide "a break from the chaos and dysfunction" they have experienced over the past two years, the court determined that the plan was "reasonable and in the children's best

interest." The court explained that "[t]he award of sole parental rights and responsibilities to [Lindsay] vests her with the authority to decide where she and the children will live, where the children will go to school, and the terms of contact between the children and their father." However, the order provides that if Lindsay relocates, she must facilitate contact between Eric and the children through regular and consistent communication via Skype, and through visits by Eric with the children in Switzerland and when the children are in Maine.

[¶7] Finally, the court ordered Eric to reimburse Lindsay $7,500 of her attorney fees and reimburse her half of the $15,812 in expert fees incurred for Eric's psychological evaluation and the psychologist's testimony in court.

## II. DISCUSSION

### A. Relocation

[¶8] Eric contends that the court erred by permitting the issue of Lindsay's relocation abroad to be litigated because he did not receive proper notice of the relocation pursuant to 19-A M.R.S. § 1653(14) (2015), and because the issue was not raised at any time prior to the hearing. He also asserts that he did not consent to litigating the issue. As previously noted, the

6

court found that although the issue of relocation was not pleaded in the parties' 2014 motions, it was tried by implicit agreement.

[¶9]  We review a court's application and interpretation of a statute de novo.  *Efstathiou v. Aspinquid, Inc.*, 2008 ME 145, ¶ 57, 956 A.2d 110.  To interpret the meaning of a statute we look to its plain language, and "[i]f the statute's meaning is unambiguous, and not illogical or absurd, that meaning controls, and we do not look beyond its words."  *Bank of Am., N.A. v. Cloutier*, 2013 ME 17, ¶ 12, 61 A.3d 1242.

[¶10]  Title 19-A M.R.S. § 1653(14) provides:

[A parental rights and responsibilities] order must require notice of the intended relocation of a child by a parent awarded shared parental rights and responsibilities or allocated parental rights and responsibilities.  At least 30 days before the intended relocation of a child by a parent, the parent shall provide notice to the other parent of the intended relocation.  If the relocation must occur in fewer than 30 days, the parent who is relocating shall provide notice as soon as possible to the other parent.  If the parent who is relocating believes notifying the other parent will cause danger to the relocating parent or the child, the relocating parent shall notify the court of the intended relocation, and the court shall provide appropriate notice to the other parent in a manner determined to provide safety to the relocating parent and child.

[¶11]  The meaning of section 1653(14) is unambiguous.  The statute requires a court order awarding shared or allocated parental rights and responsibilities to contain a provision requiring notice to be given prior to a

parent's relocation with a child. It does not, as Eric asserts, require thirty days' notice to be given prior to a court proceeding where the relocation may be addressed pursuant to a pending motion. *See Malenko v. Handrahan*, 2009 ME 96, ¶ 27, 979 A.2d 1269 (citing 19-A M.R.S. § 1653(10), (14) (2015)) ("If . . . [the mother] desires to relocate the child's residence outside of Maine, she must give [the father] prior notice. Upon his receipt of such notice, [he] may, if he so elects, contest the proposed relocation and obtain a best interest determination based on the child's then-existing circumstances.")

[¶12] Accordingly, the lack of explicit written notice to Eric of Lindsay's potential relocation prior to the hearing on the motions to enforce and modify the judgment did not preclude the court from considering that development in Lindsay's plans, given that Eric was well aware of the possible move before the second day of the hearing began, and the parties had a full opportunity to address the issue during the hearing and did so in detail. The court did not err with respect to the application of 19-A M.R.S. § 1653(14).

[¶13] In any event, to the extent that Lindsay's relocation was an independent, unpleaded issue at the hearing, the court did not err in determining that the parties implicitly agreed to its litigation. Maine Rule of Civil Procedure 15(b) provides that "[w]hen issues not raised by the

8

pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings."[1]  Only when it appears clear from the record that both parties consented to the trial of an issue will we deem the issue to have been tried by consent.  *Bernier v. Merrill Air Eng'rs*, 2001 ME 17, ¶ 22, 770 A.2d 97.

[¶14]  To determine whether an issue is tried by implied consent, the parties' conduct is informative:

> If it is plain from the conduct of the parties that they recognize an unpleaded issue as being in the case, no problem arises.  On the other hand, if one party offers evidence which the other reasonably believes is of no consequence and therefore does not object to it, cross-examine upon it or seek to controvert it by other evidence, the issue can hardly be considered as having been tried by implicit consent.

2 Harvey & Merritt, *Maine Civil Practice* § 15.5 at 487 (3d, 2015-2016 ed.).  We have recognized, however, that authority supports "the proposition that an issue is tried by implied consent when one party generates it during the trial and the opposing party does not object to it at the time."  *DiBiase v. Universal Design & Builders, Inc.*, 473 A.2d 875, 877 (Me. 1984); *see also Steinberg v. Elbthal*, 463 A.2d 731, 734 (Me. 1983) ("[F]ailure to object to extensive

---

[1]  Although neither party moved to amend the pleadings, the "failure . . . to amend does not affect the result of the trial of these issues."  M.R. Civ. P. 15(b).

evidence that is relevant only to an issue not raised by the pleadings would strongly suggest acquiescence in the trial of that issue . . . .")

[¶15]  During the first day of the hearing in December 2015, Lindsay's husband testified about their potential relocation abroad on direct examination and Eric cross-examined him on the subject.  On the second day of the hearing nearly one month later, Lindsay testified about relocating and Eric also cross-examined her on the issue.  Moreover, the guardian ad litem was recalled on the second day of the hearing, and Eric questioned her exclusively about her opinion on Lindsay's proposed move abroad.  Despite Eric's objection after the close of the evidence to litigation of the issue, we conclude that Eric's conduct on both days of the hearing made it clear that he understood that Lindsay's proposed relocation was at issue in this case, and that the court correctly determined that the issue was tried by implicit agreement of the parties.

B.    Attorney and Expert Fees

[¶16]  Eric asserts that the court erred when it ordered him to pay a portion of Lindsay's attorney fees and half of the expert costs because it failed to articulate a proper basis for the awards.[2]

---

[2]  We note that neither party challenged the amount or allocation of the fees incurred by the guardian ad litem.

[¶17]  We review an award of attorney fees for an abuse of discretion. *Pearson v. Wendell*, 2015 ME 136, ¶ 47, 125 A.3d 1149.  In deciding the amount of attorney fees to award, "the trial court has discretion to consider all factors that reasonably bear on the fairness and justness of the award." *Smith v. Padolko*, 2008 ME 56, ¶ 17, 955 A.2d 740 (quotation marks omitted). "Relevant factors include the parties' relative capacity to absorb the costs of the litigation and conduct by one party that increases the costs of the litigation." *Jandreau v. LaChance*, 2015 ME 66, ¶ 29, 116 A.3d 1273.

[¶18]  The court's order states that it "considered the issues, the parties' positions, and their ability to bear the costs of litigation" in determining that it was appropriate for Eric to reimburse Lindsay for a portion of her attorney fees.  Despite Eric's contentions, this language indicates that the trial court appropriately considered relevant factors.  *See Smith*, 2008 ME 56, ¶¶ 18-19, 955 A.2d 740.  Furthermore, the court noted that it reviewed the submitted attorney fee affidavits, which provided information regarding the fees' reasonableness, and it gave a concise, clear explanation of its reason for awarding the fees.  *See Miele v. Miele*, 2003 ME 113, ¶ 17, 832 A.2d 760; Levy, *Maine Family Law* § 9.2 at 9-3 to 9-5 (8th ed. 2013).  Accordingly, the court did not abuse its discretion in its award of attorney fees to Lindsay.

[¶19]   In addition to attorney fees, a "court may order a party to pay reasonable fees and expenses of 3rd-party participants in the proceedings, including guardians ad litem, expert witnesses and providers of services, whether retained by a party or the court."  19-A M.R.S. § 105(3) (2015).  We review a trial court's decision ordering a party to pay fees and expenses of third party participants for an abuse of discretion.  *See Wooldridge v. Wooldridge*, 2002 ME 34, ¶¶ 3, 8, 791 A.2d 107; *Cole v. A.J. Cole & Sons, Inc.*, 567 A.2d 1342, 1343-44 (Me. 1989).

[¶20]   The court found that Lindsay incurred $15,812 in fees on her credit card to have a psychologist perform a parental capacity evaluation of Eric and testify in court.  The court also found that the "evaluation was made necessary by [Eric]'s behavior and conduct"; that Eric earned about $107,000 in 2015; and that Lindsay had no actual income that year but could be imputed minimum wage.  Accordingly, we conclude that the court's award of expert fees to Lindsay did not exceed its discretion.

The entry is:

> Judgment affirmed.

12

**On the briefs:**

Aaron Fethke, Esq., Law Office of Aaron Fethke, Searsport, for appellant Eric J. Verite

Christopher K. MacLean, Esq., Elliott, MacLean, Gilbert & Coursey, LLP, Camden, for appellee Lindsay E. Verite

Rockland District Court docket number FM-2010-106
FOR CLERK REFERENCE ONLY