MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:      2017 ME 62
Docket:        Pen-16-292
Submitted
  On Briefs:  January 19, 2017
Decided:      April 4, 2017

Panel:         SAUFLEY, C.J., and ALEXANDER, MEAD, GORMAN, JABAR, HJELM, and HUMPHREY, JJ.

HEIDI VIBERT

v.

ANTONIOS N. DIMOULAS

PER CURIAM

[¶1]  Heidi Vibert and Antonios N. Dimoulas never married but had been in a long-term, high-conflict relationship.  They are the parents of two minor children.  Dimoulas appeals from a judgment of the District Court (Bangor, *Jordan, J.*) awarding sole parental rights and responsibilities and primary residence of the children to Vibert, while granting Dimoulas supervised contact conditioned on his submission to a psychological evaluation and the results thereof.  We affirm the judgment.

## I.  CASE HISTORY

[¶2]  The trial court made detailed findings addressing all issues in this parental rights matter.  Those findings are supported by the evidentiary record.  The following facts are derived from the trial court record, which

must be viewed in the light most favorable to the trial court's judgment. *See Sloan v. Christianson*, 2012 ME 72, ¶ 2, 43 A.3d 978.

[¶3] In October 2014, after Dimoulas had become increasingly irrational and unpredictable, resulting in numerous contacts with law enforcement, Vibert hid the children's clothing in plastic bags behind their home so that she and the children could leave without alerting Dimoulas.[1] Vibert fled with the children to New Hampshire, where she had family support.

[¶4] In January 2015, Vibert filed a complaint in Maine seeking a determination of parental rights and responsibilities. *See* 19-A M.R.S. § 1653(2) (2016). Two months later, the court appointed a guardian ad litem. On August 27, 2015, the court (*Campbell, J.*) held a hearing in response to Vibert's emergency motion for interim relief. At the conclusion of the hearing, the court orally stated its order on the record, granting shared parental rights and responsibilities to the parties and awarding primary residence of the children to Vibert. The court awarded Dimoulas unsupervised contact on alternating weekends, and because the children were visiting Dimoulas

---

[1] The guardian ad litem reported that Dimoulas has had 211 contacts with local law enforcement since 1989. From January 2015 to May 2015, Dimoulas was involved with law enforcement eighteen times, usually as the complainant and sometimes in the presence of the children.

immediately after the hearing, the court specifically directed Dimoulas to return the children to their mother on September 2, 2015. The written version of the court's order was entered on September 3, 2015.

[¶5] On September 2, in direct violation of the interim order, Dimoulas refused to return the children to Vibert. Two days later, Vibert, accompanied by law enforcement, retrieved the children from Dimoulas. Although he was in violation of the court's order by refusing to return the children, Dimoulas testified that the police "raided" his home and that he called 9-1-1 several times while the police were still at his home to report that the police were "kidnapping" his children.

[¶6] A few days later, Dimoulas drove to New Hampshire unannounced and took his son out of school. Dimoulas attempted to take his daughter from her school as well, but school officials refused to release her. Dimoulas brought his son back to Maine and enrolled him in school.[2] He kept his son for several days without notifying Vibert of his whereabouts. At the time, Dimoulas was subject to a protection from harassment order in New Hampshire, and his conduct led to criminal charges in New Hampshire.

---

[2] Whenever the children visited Dimoulas in Maine, he re-enrolled them in Maine schools even though their primary residence was in New Hampshire and they attended school in New Hampshire. School officials expressed concern about the impact that enrolling and re-enrolling the children for a few days at a time had on the children.

4

Dimoulas's attorney in the New Hampshire criminal action requested a court-ordered psychological exam.

[¶7] The parties proceeded to a final hearing in the parental rights action on April 28, 2016. The court (*Jordan, J.*) relied on the guardian ad litem's reports and testimony from the interim hearing and heard testimony from Vibert, Dimoulas, and Dimoulas's children from a previous marriage.

[¶8] The court found that Dimoulas's demeanor on the stand was "somewhat unsettling," that his account of events was disconnected from what the objective information demonstrated, and that Dimoulas "ha[d] shown a disturbing pattern of relating reality as he interprets it," including his description of a wonderful relationship with Vibert and his expressed belief that the interim hearing was a "sham" that was "staged" by both attorneys, the guardian ad litem, and the judge.

[¶9] The court found that Dimoulas's testimony and demeanor demonstrated that he felt entitled to make all the decisions for the children and that he was willing to co-parent "as long as [the mother] does what he wants." The court also found that if Dimoulas were given primary residence or shared decision-making authority, he was unlikely to foster cooperation,

contact between the children and Vibert, or stability for the children.[3] The court's findings were based, in part, on Dimoulas's verbal and emotional abuse of Vibert[4] and the negative effect that Dimoulas's behavior had on the children's emotional, physical, and academic well-being. The court found that Dimoulas's behavior was unlikely to change without some form of psychological intervention.

[¶10] In its judgment entered on May 24, 2016, the court considered the best interest factors set forth in 19-A M.R.S. § 1653(3) (2016), and specifically addressed factors (A)-(K). In particular, the court noted that (1) the children had significant relationships with both parents and their extended families; (2) Vibert had done well at settling the children into their new community in New Hampshire where Vibert had stable relationships; (3) both parties were capable of giving the children love and affection; (4) Vibert was more capable of providing appropriate guidance and being

---

[3] Conversely, the court found that Vibert was more credible and that her decisions and behavior were reasonable. She had made numerous efforts to co-parent with Dimoulas, to foster consistent telephone contact between Dimoulas and the children, and to shield the children from the parents' disputes. The court found that it was remarkable that the record contained no evidence of the children being upset with their mother and that this was likely due to Vibert's appropriate behavior.

[4] The guardian ad litem's reports—which contained observations by independent witnesses, school officials, and counselors—confirmed that Dimoulas disparaged Vibert in front of the children and that Dimoulas was "unable to separate his intense anger [with Vibert] from his appropriate interaction with the children." For example, Dimoulas repeatedly called and texted Vibert, using vulgar language and calling her vulgar names.

6

cooperative; (5) Dimoulas's anger with Vibert interfered with his judgment; and (6) Vibert having sole authority over decision-making would provide more stability for the children.

[¶11]    Finding that the previous award of shared rights and responsibilities and unsupervised contact had proven to be an unworkable arrangement, subjecting the children to a "tug-of-war," as demonstrated by Dimoulas's conduct after the interim order, the court awarded sole parental rights and responsibilities and primary residence to Vibert.

[¶12]  The court granted Dimoulas supervised contact on alternating weekends and reasonable telephone contact during the week to be monitored by Vibert.  Dimoulas's contact was conditioned upon the performance and results of a psychological evaluation.  The court further required Dimoulas to sign releases allowing Vibert to present her account of Dimoulas's behavior to the psychological examiner and authorizing Vibert to receive a copy of the examiner's report.

[¶13]  The court ordered that the children not be exposed, directly or indirectly, to behavior or comments that disparage either parent.  The court also made findings regarding the parties' incomes and support obligations. The court found that Dimoulas had not made any child support payments, nor

other court-ordered payments, and that Dimoulas's testimony that he was unaware that he had to make such payments was not credible and constituted further evidence of Dimoulas's disregard of court orders. As such, the court ordered Dimoulas to pay a portion of Vibert's attorney fees.

[¶14] No motion for further findings of fact and conclusions of law was filed. *See* M.R. Civ. P. 52. Dimoulas filed this timely appeal. *See* 14 M.R.S. § 1901 (2016); 19-A M.R.S. § 104 (2016); M.R. App. P. 2.

## II. LEGAL ANALYSIS

[¶15] "When a court determines parental rights and responsibilities, it applies the best interest of the child standard as set forth in 19-A M.R.S. § 1653(3)." *Grant v. Hamm*, 2012 ME 79, ¶ 6, 48 A.3d 789. We review the trial court's factual findings for clear error and its ultimate conclusion for an abuse of discretion. *Id.* "The judgment of the trial court is entitled to very substantial deference because the court is able to appraise all the testimony of the parties and their [witnesses]." *Id*. "[W]e review the record, and reasonable inferences that may be drawn from the record, in the light most favorable to the trial court's judgment to determine if the findings are supportable by competent evidence." *Sloan*, 2012 ME 72, ¶ 2, 43 A.3d 978.

8

## A. Best Interest

[¶16]   Dimoulas argues that the court's factual findings were clearly erroneous and that the court abused its discretion in its award of sole parental rights and responsibilities and primary residence to Vibert.   Dimoulas challenges many aspects of the court's order but primarily argues that the court erred by having an unwaveringly favorable view of Vibert, discounting Dimoulas's claimed good behavior in the seven months before the final hearing, and giving too much weight to Dimoulas's disregard for prior court orders.   These arguments are directed to the weight and credibility the court attached to particular evidence.   On appellate review, "we will not substitute our judgment as to the weight or credibility of the evidence for that of the fact-finder if there is evidence in the record to rationally support the trial court's result." *State v. Connor,* 2009 ME 91, ¶ 9, 977 A.2d 1003.

[¶17]   Here, the court undertook a comprehensive best interest determination, *see* 19-A M.R.S. 1653(3), with all the statutory factors in mind before reaching its conclusion.   The court found that the children have strong familial relationships with both Vibert and Dimoulas and that both parents are capable of giving love and affection to their children.   Most important to the safety and well-being of the children, however, was the court's finding that

Dimoulas was incapable of co-parenting with Vibert and acting appropriately in front of the children. This finding was supported by Dimoulas's pattern of disregard for court orders and frequent disparagement of Vibert in the children's presence. In contrast, the court found that Vibert made significant efforts to foster a co-parenting relationship with Dimoulas, making her better suited for decision-making authority and providing the children's primary residence. Therefore, the court did not commit clear error in its factual findings or abuse its discretion in its ultimate conclusion. *See Bulkley v. Bulkley*, 2013 ME 101, ¶ 14, 82 A.3d 116 ("The ultimate determination of the weight to be given each factor requires careful consideration by the court and is done on an individualized, case-by-case basis.").

B.     Psychological Examination

[¶18]  Dimoulas argues that the court abused its discretion by requiring him to participate in a psychological examination before having any contact with his children, including contact by telephone. He contends that the court erroneously relied on information that was stale and that the court should not have considered the request for a competency evaluation in New Hampshire in ordering a psychological evaluation in Maine. Furthermore, Dimoulas argues that the court abused its discretion in requiring Dimoulas to provide

Vibert with the results of his psychological exam because it would contain confidential information, Vibert would not be restricted from further disseminating that private information, and the court would be in a better position to review it in camera.

[¶19] Section 1653(3) affords the trial court broad discretion in making its best interest determination, so long as children's safety and well-being are central to the court's decision. *Bulkley*, 2013 ME 101, ¶ 13, 82 A.3d 116. "Moreover, 19-A M.R.S. § 1653(3)(N) provides that the trial court has the discretion to consider all other factors having a reasonable bearing on the physical and psychological well-being of the child." *Id.* ¶ 17 (alterations omitted). Here, the court expressly stated that the children's safety and well-being were its primary concern. The court found that many persons involved in the case—including Vibert, the guardian ad litem, the police, school officials, the children's therapists and counselors, and, most importantly, the children—had observed Dimoulas's emotional and erratic behavior. Thus, it was neither unreasonable nor unusual for the court to order a psychological examination and require disclosure of the results to Vibert, who will have sole decision-making authority for the children. *See Verite v. Verite*, 2016 ME 164, ¶¶ 3-6, 151 A.3d 1; *Sloan*, 2012 ME 72,

¶¶ 19, 22, 43 A.3d 978; *Neudek v. Neudek*, 2011 ME 66, ¶ 3, 21 A.3d 88; *Malenko v. Handrahan*, 2009 ME 96, ¶ 17, 979 A.2d 1269. The trial court did not abuse its discretion in awarding supervised contact with the children to Dimoulas conditioned on submitting to a psychological evaluation and disclosing the results to Vibert.

The entry is:

Judgment affirmed.

---

Dennis R. Hamrick, Esq., Bangor, for appellant Antonios N. Dimoulas

Daniel A. Pileggi, Esq., Acadia Law Group, LLC, Ellsworth, for appellee Heidi Vibert

Bangor District Court docket number FM-2015-06
FOR CLERK REFERENCE ONLY