MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:     2013 ME 109
Docket:       Pis-13-142
Submitted
 On Briefs:   October 31, 2013
Decided:      December 17, 2013

Panel:        SAUFLEY, C.J., and ALEXANDER, LEVY, SILVER, <u>MEAD</u>, and JABAR, JJ.

# WENDELL K. BRASIER

v.

# VANESSA L. PREBLE

MEAD, J.

[¶1]  Vanessa L. Preble appeals from a judgment entered by the District Court (Dover-Foxcroft, *Stitham, J.*) modifying a parental rights and responsibilities order by awarding primary residence of the parties' two children to Wendell K. Brasier.  Vanessa contends that the evidence presented at a hearing was insufficient to establish a substantial change in circumstances justifying a change in the children's primary residence.  We affirm the judgment.

## I.  BACKGROUND

A.    Procedure

[¶2]  In June 2006, Wendell filed a complaint to determine parental rights and responsibilities concerning the children.  The court (*R. Murray, J.*) awarded shared rights and responsibilities, with Vanessa having primary residence and Wendell having specified rights of contact.  In 2007, Wendell filed motions to

2

enforce and to modify. The court (*Stitham, J.*) found that the provisions of the original order concerning Wendell's contact with the children were not working well, and that a substantial change in circumstances warranted the establishment of a more detailed visitation schedule. The court declined to change the children's primary residence.

[¶3] In November 2012, Wendell again filed motions to enforce and to modify. The court held a hearing at which Wendell and his wife, and Vanessa and her father, testified. At the conclusion of the hearing, the court ruled from the bench that there had been a substantial change in circumstances since the 2007 modification, and that it was in the children's best interest that their primary residence be changed to Wendell. The court ordered that the change be effective immediately and directed the parties and counsel to remain in the courtroom to work out the details. That decision was memorialized in a written order entered the same day. This appeal followed.

B.    Facts

[¶4] The court's factual findings are supported by the record. Wendell has lived in Cambridge for the past five years with his wife and two stepchildren, who are the same ages as his two children. He is a self-employed carpenter. When they are all together, Wendell, his wife, and the four children have, the court found, a nurturing, "great" relationship. In April 2010, Vanessa moved from Bremen,

where she lived at the time of the 2007 modifications, to Swan's Island. She stays home and takes care of her two children and two stepchildren. The court found that it had "absolutely no evidence to make a finding as to [Vanessa's] two children's relationship with their stepfather . . . or his two children."

[¶5] Wendell's contact with the children as mandated by the 2007 order was the court's major concern and the primary focus of the hearing. The court heard evidence that from 2007 through the spring of 2010 visitation went reasonably well, although transportation issues precluded some visits. Shortly after the children began their 2010 summer vacation, Wendell picked them up for one of his three court-ordered weeks of summer visitation. During that week Vanessa called him and said she was moving to Swan's Island the following day. For the next two months Wendell received phone calls and text messages delaying the children's return to Vanessa. After two months, Vanessa called to say that she was coming for the children the next day. Wendell testified that he refused "because . . . the kids . . . had been there for two months, and in my eyes she abandoned them."

[¶6] Four days later, late in the evening, Wendell was served with a temporary protection order by law enforcement officers and the children were turned over to Vanessa's father. The next day, Wendell saw Vanessa and her father at a department store and she allowed him to hug the children. The temporary protection order was dismissed when Vanessa did not appear for the

4

final hearing. She told the court during the hearing on the motion to modify that in applying for the protection order she did not allege that Wendell had been abusive toward her or the children, and that she did not appear for the final hearing because the only purpose of the order was to get the children back from him.

[¶7] From the fall of 2010 through the early summer of 2011, visitation went fairly well, but shortly thereafter the situation grew markedly worse. Wendell had the children for a week in late summer and then did not see them again from August 2011 until April 2012. He testified that the eight-month interval without visits was due to Vanessa's schedule and her lack of money for gas and fares for the ferry to bring the children to the exchange point. Wendell had asked to see the children during February school vacation, but Vanessa said he could not because "there was something going on." He then saw the children for a day and a half during April school vacation, but had to send them back to Vanessa because she wanted to take them to a movie at the library and their son had karate practice.

[¶8] In the summer of 2012, Wendell did not have any visits because Vanessa's phone had been shut off, and she said that she did not want to send the children to him without having a working phone in case of an emergency. For several weeks that summer, Wendell had no phone contact with the children because Vanessa did not have a working phone.

[¶9]  By Christmas 2012, Wendell had not seen the children since April, another eight-month interval.  The parties agreed that during Christmas vacation Wendell would have the children from December 26-29.  The court found that Wendell could have spent more time with the children but for (1) Vanessa's decision not to send them to his house on the 25th when her father was returning home from a visit to Swan's Island; and (2) her decision to let her father keep the children at his house in Guilford for two days after picking them up on the 29th, even though her father was going to see them over the New Year's holiday and Wendell had asked her for another night with them.  When asked by the court why, in light of all of the visits Wendell had missed, she did not send the children to Wendell with her father when he returned home Christmas afternoon, Vanessa said "they wanted to stay and play with [their] toys," and sending them to Wendell a day early "didn't even occur to me, really."

[¶10]  After the four-day Christmas visit, Wendell did not see the children again before the hearing in February 2013.  He asked Vanessa if he could have them for the February school vacation in lieu of some of his weekend visits; she replied that their son had a basketball game.  Wendell was able to speak to their daughter on the phone once, but Vanessa told him that the children generally did not want to talk to him on the phone.

6

[¶11]  Vanessa told the court that she had not done anything in January or February 2013 to try to have the children see Wendell and asserted that Wendell had not done anything to facilitate visits either.  Vanessa acknowledged that the children had visited her father at his home in Guilford, thirty minutes from Wendell's residence, three or four times without seeing Wendell, and that absent a reliable vehicle, all she would do to facilitate visitation was deliver the children at the mainland ferry terminal.

## II.  DISCUSSION

[¶12]  A parental rights and responsibilities order may be modified "only when the moving party can demonstrate a substantial change in circumstances since the entry of the most recent decree, as long as such modification serves the best interest of the child."  *Neudek v. Neudek*, 2011 ME 66, ¶ 10, 21 A.3d 88 (discussing 19-A M.R.S. § 1657(1) (2012)) (quotation marks omitted).  "We review the findings of fact in an order on a post-divorce motion for clear error, and the court's ultimate decision for an abuse of discretion or error of law."  *Desmond v. Desmond*, 2011 ME 57, ¶ 2, 17 A.3d 1234.

[¶13]  We find no abuse of discretion on this record.  To the contrary, the court conducted a thorough and thoughtful analysis in finding that there had been a substantial change in circumstances since the 2007 order, and that a change in primary residence was in the children's best interest.

A.    Substantial Change in Circumstances

[¶14]    Concerning the court's finding of a substantial change in circumstances, the Legislature has said that

> [i]n reviewing a motion for modification or termination [of a parental rights and responsibilities order] . . . the following constitute[s] a substantial change in circumstances:
>
> . . . .
>
> The relocation, or intended relocation, of a child that will disrupt the parent-child contact between the child and the parent who is not relocating, if there exists an award of shared or allocated parental rights and responsibilities concerning the child.  Relocating the child more than 60 miles from the residence of the parent who is relocating or more than 60 miles from the residence of the parent who is not relocating is presumed to disrupt the parent-child contact between the child and the parent who is not relocating[.]

19-A M.R.S. § 1657(2)(A-1) (2012).

[¶15]  Here, Wendell has lived in the Town of Cambridge for the past five years.  Vanessa acknowledged moving in April 2010 from Bremen to Swan's Island.  Swan's Island is more than sixty miles from Cambridge, plus a ferry ride, and also more than sixty miles, plus a ferry ride, from Bremen.  Accordingly, the court was required by statute to presume that the move disrupted Wendell's contact with his children.  Beyond the statutory presumption, the court emphatically found that to be the case, terming Vanessa's move "a huge change in circumstances." Wendell testified, and the court accepted, that Vanessa's residence on an island

8

accessible only by ferry greatly increases the difficulty of Wendell maintaining contact with the children.

B.    Best Interest of the Children

[¶16]  The court systematically applied each of the nineteen factors set out in 19-A M.R.S. § 1653(3) (2012) in concluding that "it is in the best interests of each child that [Wendell] be awarded the primary residence of each child immediately." *See Sloan v. Christianson*, 2012 ME 72, ¶ 40, 43 A.3d 978 (noting the trial court's "proper[] and very thorough[]" application of each factor).  In making its assessment, the court, as it was entitled to do, found Vanessa and her father to be less than credible on key points, and found that Wendell was credible.  *See id.* ¶ 29 ("[B]ecause of the trial court's superior vantage point . . . we will not substitute our judgment for that of the trial court as to the weight or credibility of the evidence . . . .").

[¶17]  The court's careful analysis, in which it (1) detailed the significant events that had occurred since the 2007 order, (2) explained how those events constituted a substantial change in circumstances, and (3) explicitly applied each of the statutory best interest factors set out in 19-A M.R.S. § 1653(3), was exemplary, and we discern no error in the court's decision.

The entry is:

Judgment affirmed.

**On the briefs:**

Ferdinand A. Slater, Esq., Ellsworth, for appellant Vanessa Preble

Wayne Doane, Esq., Exeter, for appellee Wendell Brasier

Dover-Foxcroft District Court docket number FM-2006-68
FOR CLERK REFERENCE ONLY