MAINE SUPREME JUDICIAL COURT                           Reporter of Decisions
Decision:      2014 ME 110
Docket:        Sag-14-19
Submitted
 On Briefs:    July 30, 2014
Decided:       September 9, 2014

Panel:         SAUFLEY, C.J., and ALEXANDER, SILVER, MEAD, GORMAN, and JABAR, JJ.

PATRICK T. JACKSON III

v.

SALLY A. (JACKSON) MACLEOD


ALEXANDER, J.

[¶1]   Patrick T. Jackson III appeals from a judgment of the District Court

(West Bath, *Field, J.*) granting Sally A. (Jackson) MacLeod's motion to modify the

parties' parental rights and responsibilities judgment and imposing a $1000 civil

penalty against Jackson. *See* 19-A M.R.S. §§ 1653(10), 1657(1) (2013).[1]  Jackson

---

[1]  Title 19-A M.R.S. § 1653(10) (2013) provides:

> **10. Modification or termination.**   Upon the petition of one or both of the
> parents, an order for parental rights and responsibilities with respect to a minor child may
> be modified or terminated as circumstances require.
>
> **A.** Modification and termination of child support orders are governed by section
> 2009.
>
> **B.** Modification of and termination orders for parental rights and responsibilities
> other than child support are governed by section 1657.

2

argues that the court erred or abused its discretion by (1) relying on events that occurred in the period between the filing of MacLeod's motion to modify and the hearing on that motion, (2) finding that it was in the youngest child's best interest to cease overnight visitation with Jackson until the child turns sixteen, (3) considering evidence of a parenting dispute between Jackson and MacLeod, (4) finding that there had been a substantial change in circumstances that justified a modification of parental rights and responsibilities, and (5) assessing a civil penalty against Jackson. We affirm the portions of the judgment relating to the modification of Jackson's rights of contact with the youngest child, but vacate the portion of the judgment assessing a civil monetary penalty.

## I. CASE HISTORY

[¶2]  Jackson and MacLeod married in 1993 and have three children together. Jackson filed for divorce in 2002, and in 2004 the court issued a divorce judgment. Since its outset, this divorce action has been characterized by an

---

Title 19-A M.R.S. § 1657 (2013) provides**:**

**§ 1657. Modification or termination of orders for parental rights and responsibilities**
    **1. Modification or termination.**  An order for parental rights and responsibilities may be modified or terminated as circumstances require:

    **A.** Upon the petition of one or both of the parents; or

    **B.** Upon the motion of an agency or person who has been granted parental rights and responsibilities or contact with a child under this chapter.

    . . . .

unusually large number of motions caused by both parties' unwillingness or inability to cooperate and communicate, particularly related to matters involving their children.

[¶3] This continuing contentiousness, which has now extended over a decade, has likely had adverse effects on the parties' children, and has required a tremendous commitment of judicial resources toward protecting the children and their best interests. In an effort to alleviate the conflict and facilitate greater cooperation between the parties, the court employed many intensive case management efforts over the years. These efforts included requiring the parties to attend the High-Conflict Kids First program, the special assignment of a single justice, the employment of a second single justice to offer a "second opinion," the use of "ourfamilywizard" and a special deposit mechanism, and the appointment of a guardian ad litem and special master pursuant to M.R. Civ. P. 53. Despite the court's efforts, the intense level of conflict and litigation between the parties persists.

[¶4] Prior to the judgment at issue in this appeal, Jackson and MacLeod shared parental rights over educational decisions because Jackson, through a family trust, pays for the three children's private school education. MacLeod had sole parental rights over all other major decisions. MacLeod also provided the primary residence for all three children, although the eldest child, now eighteen,

4

has chosen to reside with Jackson. Jackson had reasonable rights of contact with the children every other weekend as well as certain holidays and school vacation periods.[2]

[¶5] In December 2012, MacLeod filed a motion for contempt alleging, among other things, Jackson's violation of the court's order requiring him to pay a portion of the children's unreimbursed medical expenses. *See* M.R. Civ. P. 66, 120. The court held a hearing on the motion in March 2013, but did not immediately issue a decision.

[¶6] While the motion for contempt was under advisement, MacLeod filed a motion to modify the then-current parental rights order, alleging that Jackson was not communicating about decisions relating to the children's education and was enabling the oldest child's use of tobacco and alcohol. In the motion, MacLeod requested that the court grant her sole parental rights over the children's education and limit Jackson's visitation with the children to monitored daytime visits.

[¶7] In August 2013, the court issued an order finding Jackson in contempt for failure to pay various child-related expenses, and establishing yet another mechanism in an attempt to ensure that Jackson pays these obligations in a timely

---

[2] Earlier in the litigation, the court mandated that Jackson's visits with the children be supervised or in public places. As time and the litigation progressed, the court removed this restriction, but kept detailed rules regarding age-appropriate activities for the children while in his care.

manner.[3] MacLeod then filed a motion for relief from judgment to correct various clerical errors, *see* M.R. Civ. P. 60(a), and to amend the judgment, *see* M.R. Civ. P. 59(e).

[¶8] In response, the court issued an amended final order and addressed the portion of MacLeod's motion that sought sole parental rights over educational issues. The court ruled that MacLeod could proceed on the motion to modify, except with regard to "the issue of sole parental rights, which has been repeatedly litigated, and is barred under the doctrines of res judicata and issue preclusion." MacLeod did not appeal this judgment, which resolved the motion for contempt and partially resolved the motion to modify.

[¶9] In November 2013, the court held a hearing on MacLeod's motion to modify. Jackson and MacLeod were the only witnesses. Both parties testified, over Jackson's objection, about events that occurred during the summer of 2013, which was after MacLeod had filed the motion to modify. In November 2013, the court issued an order eliminating the youngest child's overnight visits until she turns sixteen,[4] requiring Jackson to "report all sudden changes in medical

---

[3] This was the third time Jackson had been found in contempt for nonpayment of child-related expenses despite Jackson's apparently unlimited access to his family's trust funds.

[4] The court noted that the oldest child had already moved in with Jackson and that the middle child was away at boarding school, so the only child who would be affected by a change in the visitation schedule would be the youngest child.

6

situations, regardless of how minor they seem to him" to MacLeod "by the fastest possible means," and ordering Jackson to pay a $1000 civil penalty.

[¶10]  The court relied on the following facts, which, contrary to Jackson's arguments on appeal, are supported by competent evidence in the record. *See Gordon v. Cheskin*, 2013 ME 113, ¶ 12, 82 A.3d 1221 (stating that a trial court's factual findings are reviewed for clear error and that we will defer to the trial court's determination of witness credibility and resolution of conflicting testimony); *Sloan v. Christianson*, 2012 ME 72, ¶ 2, 43 A.3d 978 ("[W]e review the record, and reasonable inferences that may be drawn from the record, in the light most favorable to the trial court's judgment to determine if the findings are supportable by competent evidence.").

[¶11]  Late in the summer of 2013, after MacLeod filed the motion to modify, a wild skunk bit the youngest child while she was playing outside unattended at Jackson's residence.  The skunk that bit her had been behaving oddly and was slow and unsteady on its feet.  When the child came inside following the incident, Jackson observed a bite mark on her inner thigh.  Even though the circumstances suggested that the child may have been bitten by a rabid skunk, Jackson looked up skunks on the internet but decided not to take any further action.

[¶12]  There was no evidence presented that Jackson cleaned the wound or attempted to get the child medical attention.  Instead, he returned the child to

MacLeod and did not inform MacLeod of the bite. MacLeod learned of the skunk bite from the child and promptly brought her to a doctor, who sent them to the emergency room.

[¶13] Medical personnel at the emergency room were concerned about the possibility that the skunk had rabies and asked whether the skunk had been captured and tested. MacLeod contacted Jackson and asked him to try to capture the skunk. Jackson refused. Because the skunk was not captured and tested, the youngest child had to endure a painful fourteen-day series of rabies treatments.

[¶14] At the hearing, Jackson explained that he knew that a family of skunks had been living under his house for years and that he saw no need to capture and test them because the skunks "never caused any problem." Jackson also testified that if the child were to be bitten again it would be "handled in the exact same situation."

[¶15] The court found Jackson's attitude regarding this incident "shockingly cavalier." Jackson's dismissive attitude, the court concluded, placed the youngest child's physical health in jeopardy.

[¶16] The court also addressed another incident that occurred over the summer of 2013 involving the parties' oldest son, who was seventeen at the time of the hearing. The son had sought to get his driver's license, but for a variety of reasons, including a concern about the child's substance abuse, MacLeod

8

determined that the child was not ready to be driving and communicated this to Jackson. Jackson disregarded MacLeod's concerns, enrolled the child in a driver's education course, and signed the application for the child's driver's permit as the child's "custodial parent." By the terms of the then-outstanding court order, Jackson knew or should have known that he was not the child's custodial parent and did not possess the authority to unilaterally decide the matter. As the court concluded, his cavalier attitude conveyed his "contempt for both [MacLeod] and her rights as a mother, the court process and the [c]ourt itself," and was an intentional effort to undermine MacLeod's parental rights.

[¶17] Relying on these incidents, and what they show about Jackson's general parenting skills, the court implicitly concluded that a substantial change in circumstances had occurred and that it was in the youngest child's best interest to eliminate overnight visitation with Jackson until the child turns sixteen, which the court regarded as an "age where she can ensure that her own concerns are addressed." The court then imposed the $1000 civil fine for the "obvious attempt at subterfuge concerning the driver's license."

[¶18] Jackson timely appealed from the judgment. *See* 14 M.R.S. § 1901 (2013); M.R. App. P. 2(b)(3).

## II. LEGAL ANALYSIS

### A. Imposition of a Civil Penalty

[¶19] Jackson argues that the court exceeded its authority by imposing a monetary penalty on him in the absence of a pending motion for contempt. The court's authority to impose a civil monetary penalty upon Jackson is an issue of law that we review de novo. *See Toomey v. Town of Frye Island*, 2008 ME 44, ¶ 8, 943 A.2d 563 ("Questions of law are reviewed de novo.").

[¶20] There are only two methods by which a trial court in a family matter may impose a civil penalty against a party. First, the court may assess a civil penalty for noncompliance with a parental rights and responsibilities order upon motion and a finding that the party is in contempt. *See* 19-A M.R.S. § 1653(7)(C) (2013)[5]; M.R. Civ. P. 66(c). Second, the court may impose a civil penalty for contempt committed in the court's presence. M.R. Civ. P. 66(b). Here, a motion

---

[5] Title 19-A M.R.S. § 1653(7) (2013) provides:

**7. Violation of order concerning parental rights and responsibilities and contact.** Either parent may petition the court for a hearing on the issue of noncompliance with the order issued under subsection 2. If the court finds that a parent has violated a part of the order, the court may find that parent in contempt and may:

**A.** Require additional or more specific terms and conditions consistent with the order;

**B.** Order that additional visitation be provided for a parent to take the place of visitation that was wrongfully denied; or

**C.** Order a parent found in contempt to pay a forfeiture of at least $100.

for contempt had been filed, but it had been resolved by the August 2013 order as later amended. Because no motion for contempt was pending at the November 2013 hearing, there was no procedure under which the court could validly enter a contempt finding. Therefore, the court lacked authority to impose the civil penalty.

B. Modification of Jackson's Rights of Contact

[¶21] A court may modify a parental rights order upon the petition of either parent. 19-A M.R.S. § 1657(1)(A) (2013). However, the petitioning parent must demonstrate that a substantial change in circumstances has occurred since the previous decree and that the modification is in the best interests of the children as determined through an analysis of the factors in 19-A M.R.S. § 1653(3) (2013). *See Brasier v. Preble*, 2013 ME 109, ¶ 12, 82 A.3d 841; *Sloan*, 2012 ME 72, ¶ 38, 43 A.3d 978; *Neudek v. Neudek*, 2011 ME 66, ¶ 10, 21 A.3d 88. "The court must consider as primary the safety and well-being of the child when evaluating the best interest of the child . . . ." *Gordon*, 2013 ME 113, ¶ 18, 82 A.3d 1221.

[¶22] To determine whether a substantial change has occurred, the court must ask (1) whether there has occurred a change in circumstances that has a sufficiently substantial effect on the children's best interests to justify a modification of the prior order, and (2) if so, how the court should modify the custody arrangement in furtherance of the children's best interests. *Douglas v. Douglas*, 2012 ME 67, ¶ 14, 43 A.3d 965; *Smith v. Padolko*, 2008 ME 56, ¶ 11,

955 A.2d 740. The purpose of the substantiality requirement "is to prevent disappointed parents from bringing repeated motions to modify divorce decrees" and "'shopping' for a judge who will revise the order." *Coppersmith v. Coppersmith*, 2001 ME 165, ¶ 2, 786 A.2d 602; *see also Neudek*, 2011 ME 66, ¶¶ 10-12, 21 A.3d 88.

[¶23] We review a trial court's decision on a motion to modify a divorce judgment for an abuse of discretion or errors of law. *Sloan*, 2012 ME 72, ¶ 26, 43 A.3d 978; *Douglas*, 2012 ME 67, ¶ 13, 43 A.3d 965. A trial court is afforded broad discretion to determine the custodial arrangements for a minor child, and the determination of the weight to be given to each factor, *see* 19-A M.R.S. § 1653(3), is left to "the sound discretion of the [trial] court" after careful consideration, *Akers v. Akers*, 2012 ME 75, ¶ 3, 44 A.3d 311; *see also Jarvis v. Jarvis*, 2003 ME 53, ¶ 29, 832 A.2d 775.

[¶24] In this case, the trial court did not abuse its discretion by implicitly finding that the skunk bite and driver's permit incidents, and what they reflected about Jackson's capacity to act in the best interests of the children, constituted a substantial change in circumstances. *See Sloan*, 2012 ME 72, ¶ 21, 43 A.3d 978 (stating that the trial court implicitly found a substantial change in circumstances). Although the parties have a significant history of conflict over matters involving the care and safety of their children, the events of the summer of 2013 rose above

the level of their previous quarrels and justified the court's reevaluation of Jackson's rights of contact with the youngest child.

[¶25] The skunk incident indisputably had a substantial effect on the youngest child's safety and well-being, *see* 19-A M.R.S. § 1653(3)(N), (S), and, by itself, was significant enough to justify a modification Jackson's rights of contact. Likewise, it is reasonable to infer from Jackson's address of his seventeen-year-old child's request to attend driver's education that Jackson was not only disregarding the best interests of that child, who was struggling with substance abuse issues, *see* 19-A M.R.S. § 1653(3)(F), (I), (J), but also doing so in the face of the custodial parent's specific wishes. Under these circumstances, the court did not err or abuse its discretion in concluding that a substantial change in circumstances had occurred. *See Sloan*, 2012 ME 72, ¶ 26, 43 A.3d 978; *Douglas*, 2012 ME 67, ¶ 18, 43 A.3d 965.

[¶26] Additionally, the court made sufficient findings and undertook a sufficient analysis of those findings with regard to the children's best interests to support the elimination of overnight visitation with the youngest child. *See Bulkley v. Bulkley*, 2013 ME 101, ¶ 14, 82 A.3d 116 (stating that a court need not "robotically address every statutory [19-A M.R.S. § 1653(3)] factor . . . so long as it is otherwise evident that the court has evaluated the evidence with the best interest factors in mind") (noting *Nadeau v. Nadeau*, 2008 ME 147, ¶ 35, 957 A.2d

108); *Sargent v. Braun*, 2006 ME 96, ¶ 5, 902 A.2d 839. The court plainly took into account the youngest child's safety, well-being, and age when modifying Jackson's visitation. *See* 19-A M.R.S. § 1653(3)(A), (N), (S). The trial court ensured that the youngest child would be returned to the more responsible parent, MacLeod, every night until the child is of an age where she is capable of addressing her own medical needs.

C.    Jackson's Remaining Arguments

[¶27]  Jackson's remaining arguments are without merit. Jackson received sufficient notice of the cause of action, a motion to modify, when it was served upon him. *See* M.R. Civ. P. 5(b), (d), 8(a). That the motion did not include the specific facts that the court ultimately found constituted a substantial change in circumstances is immaterial. Courts may order modification of parental rights orders based on events that occur after the filing of the motion to modify. *See Gordon*, 2013 ME 113, ¶¶ 1, 5, 8, 82 A.3d 1221 (affirming the modification of a child custody order relying in part on events that occurred seven months after the motion was filed); *Sloan*, 2012 ME 72, ¶¶ 1, 10-20, 43 A.3d 978 (affirming a modification of parental rights that relied on events that occurred in the year-and-a-half interim period between the filing of the motion and the hearing).

[¶28]  For similar reasons, the court's previous order barring reconsideration of sole parental rights on res judicata grounds did not require the court to ignore

the events surrounding the seventeen-year-old child's driver's education. Whether or not those events are relevant to any determination regarding sole parental rights, they are relevant to the court's determination of Jackson's rights of contact with the children. Jackson and MacLeod's disagreement over whether the seventeen-year-old child should enroll in driver's education and get his driver's permit may be relevant to the allocation of decision-making authority, i.e., the issue of sole parental rights, but it is also relevant to the court's determination of Jackson's rights of contact with the children.

D.    Trial Court's Handling of the Case

[¶29]  In light of the extraordinary level of conflict between the parties in this case, we note that over the years, trial court judges have employed virtually every tool available to assist the parties. We commend those judges for their handling of this difficult and time-consuming case.

The entry is:

> Judgment assessing a civil monetary penalty vacated. Judgment affirmed in all other respects.

**On the briefs:**

Brianne M. Martin, Esq., Powers & French, P.A., Freeport, for appellant Patrick T. Jackson III

Hesper Schleiderer-Hardy, Esq., Childs, Rundlett, Fifield & Altshuler, LLC, Portland, for appellee Sally A. (Jackson) MacLeod

West Bath District Court docket number FM-2002-399
FOR CLERK REFERENCE ONLY