MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:      2016 ME 93
Docket:        Lin-15-468
Submitted
 On Briefs:    April 21, 2016
Decided:       June 21, 2016

Panel:         SAUFLEY, C.J., and ALEXANDER, MEAD, GORMAN, HJELM, and HUMPHREY, JJ.

ERIN (WALLACE) LITTLE

v.

STEPHEN W. WALLACE

SAUFLEY, C.J.

[¶1]  The now nine-year-old girl at the center of this appeal has been seriously emotionally injured by the chronic conflict between her divorced parents and the complex schedules and transitions from one parent's household to the other.  After she had a serious breakdown, she found respite in a new, less complex schedule, ordered while the parties' post-divorce motions were pending.  At the conclusion of the trial on those motions, the District Court (Wiscasset, *Raimondi, J.*) determined that a similar schedule should become part of the parties' modified divorce judgment.  The child's father appeals from the resulting judgment, which established primary residence of the parties' daughter with the mother.  We affirm the judgment.

2

## I. BACKGROUND

[¶2]  The facts are drawn from the court's extensive and thoughtful findings of fact, which are fully supported by evidence in the record.  *See Pearson v. Ellis-Gross*, 2015 ME 118, ¶ 4, 123 A.3d 223.  The parties met when Erin (Wallace) Little was nineteen and Stephen W. Wallace was forty-eight years old.  Wallace was a friend of Little's mother.  Wallace and Little were married in September 2005, and their daughter was born one year later.  The marriage broke down in 2008, and Little filed for divorce in February 2009.

[¶3]  By agreement, a divorce judgment was entered by the court (*Mathews, M.*) in December 2009 that provided for shared primary residence of the child with a weekly alternating schedule and transitions during the middle of the week.  In October 2011, acting upon the father's post-divorce motion to modify, the court (*Tucker, J.*) modified the divorce judgment based on the terms of a mediated agreement.  The resulting judgment created an even more complicated schedule of contact, requiring mid-week transitions on varying days of the week during the school year, with the child alternating weekends between her parents.

[¶4]  Over time, and in the face of the frequent transitions between parental homes, the child became increasingly depressed as the tensions between her parents grew.  By August 2014, at less than eight years old, she was talking about "not wanting her life."  During one major incident, the father sent messages to the

mother indicating that the child was distressed and asking the mother to delay in picking her up at 9:00 a.m. as scheduled. The mother declined. When the mother arrived to pick the child up at 9:00 a.m., the parents engaged in a dispute in the child's presence. The child became hysterical and remained inconsolable upon arriving at her mother's home. She was curled up in a fetal position and could not calm herself. The mother called a crisis line, and the social worker who arrived to evaluate the situation expressed a concern that the child may have been sexually abused by her father.

[¶5] The mother obtained a protection from abuse order, which was later voluntarily dismissed, and moved to modify the divorce judgment. As amended, her motion to modify asserted as one of the changes in circumstances the possibility that the child had been sexually abused by her father. The father filed a motion for contempt on the ground that the mother had prevented all contact with his daughter in violation of the existing contact schedule. The court appointed a guardian ad litem and entered an interim order establishing a limited schedule of contact for the child with her father.

[¶6] After the child was evaluated professionally for evidence of sexual abuse, the GAL reported to the court that there was no clear evidence of sexual abuse but that "there is clearly an issue to be solved with [the child]." The GAL emphasized that the child is highly sensitive to the parents' conflict and to the

4

changes in their relationships with their romantic partners—most recently involving the father's break-up with a woman who had been close to the child.

[¶7] The court entered an interim order in January 2015 granting the father increased contact with the child. After a trial held on all motions in June 2015, the court granted the mother's motion to modify the divorce judgment and denied the father's motion for contempt.[1] The court then granted post-judgment motions to alter or amend, and for reconsideration, and entered a corrected judgment and findings of fact.

[¶8] In its extensive factual findings, the court determined that it could not "find abuse based on the evidence presented." However, the court found that the child "was in an intolerable situation where she was being forced to transition between warring parents on a weekly basis. Since [the child]'s contacts with her father have been limited, she has been freed from the unbearable stress and tension of those transitions." The court further found that "the parents' enmity towards each other has been profoundly damaging to [the child,] . . . that both parties bear a measure of responsibility for that damage," and that "it is clear that [the child] is well aware that [the mother] and her husband do not like her father, and are highly

---

[1] Because the final judgment resulted in an overpayment—not an arrearage—in child support, the court also denied a motion that the mother had filed to enforce the payment of child support.

critical of him. [The child] knows that she does not have their support in loving her father and wanting to spend time with him."

[¶9] The court determined that this parental acrimony was particularly difficult for the child, who was also worried about her father's sadness at the recent break-up with his girlfriend. Despite the father's protestations, he gave the court the impression of "profound depression." Noting that it is "a parent's responsibility to care for the child, not the child's responsibility to care for the parent," the court found that, "[t]o the extent that [the father] may unwittingly present himself as the sad victim, needing and relying on [the child]'s love and affection for him, he places yet another burden upon [the child]."

[¶10] The court found that the child had more recently been thriving due to the elimination of the complex and conflict-inducing transition schedule. The child's anxiety had decreased, she had gained healthy weight, and, although the new schedule had reduced the amount of contact she had with her father, the child had "not expressed feelings of sadness or said that she [was] missing her father." Furthermore, the child was enjoying her mother's more social household, whereas there was less evidence of social interaction with others while she was with her father.

[¶11] The court concluded that, although it might seem unfair to the father given that the change in the child's residential arrangement resulted from an

investigation that ultimately resulted in no findings of sexual abuse, the evidence demonstrated that primary residence with the mother was nonetheless in the child's best interest. The court ordered a phased-in schedule of contact for the father during the weekend, and during specified holidays and vacations, with a mid-week after-school visit each week lasting slightly more than three hours. The father timely appealed from the judgment. *See* 14 M.R.S. § 1901 (2015); 19-A M.R.S. § 104 (2015); M.R. App. P. 2.

## II. DISCUSSION

[¶12] "We review the findings of fact in an order on a post-divorce motion for clear error, and the court's ultimate decision for an abuse of discretion or error of law." *Brasier v. Preble*, 2013 ME 109, ¶ 12, 82 A.3d 841 (quotation marks omitted). We will affirm the judgment over a challenge to the court's findings of fact as long as there is competent evidence in the record to support the court's findings. *Pearson*, 2015 ME 118, ¶ 4, 123 A.3d 223.

[¶13] "A parental rights and responsibilities order may be modified only when the moving party can demonstrate a substantial change in circumstances since the entry of the most recent decree" that affects the child's best interest, and that the "modification serves the best interest of the child." *Brasier*, 2013 ME 109, ¶ 12, 82 A.3d 841 (quotation marks omitted); *see* 19-A M.R.S. § 1657 (2015); *Jackson v. MacLeod*, 2014 ME 110, ¶ 22, 100 A.3d 484. For this purpose, the best

interest of the child is determined through an analysis of the factors in 19-A M.R.S. § 1653(3) (2015). *See Jackson*, 2014 ME 110, ¶ 21, 100 A.3d 484.

[¶14] The Legislature has established the child's well-being as the primary factor for consideration by the court. "In making decisions regarding the child's residence and parent-child contact, the court shall consider as *primary* the safety and well-being of the child." 19-A M.R.S. § 1653(3) (emphasis added); *see Jackson*, 2014 ME 110, ¶ 21, 100 A.3d 484. In so doing, the court must consider a range of factors, including the child's age; her relationship with her parents and their significant others; the adequacy and desirability of continuing the child's existing living arrangements; the stability of any proposed living arrangements; the parties' motivations "and their capacities to give the child love, affection and guidance"; the "capacity of each parent to allow and encourage frequent and continuing contact between the child and the other parent"; and the parents' capacity to cooperate in caring for the child and willingness to use "[m]ethods for assisting parental cooperation." 19-A M.R.S. § 1653(3)(A)-(B), (D)-(F), (H)-(J). The court must also consider "[a]ll other factors having a reasonable bearing on the physical and psychological well-being of the child." *Id.* § 1653(3)(N).

A.     Review of Factual Findings Related to a Change in Circumstances

[¶15] The father argues that the evidence does not support findings that he provided the child with only limited social interaction or that he was depressed,

8

given that no evidence of a diagnosis was provided. The father further argues that the mother failed to meet her burden of proving a substantial change in circumstances because she did not prove her allegation of sexual abuse and the child's change in residence arose from the mother's unilateral conduct.

[¶16] The court's factual findings are well supported by the record. Regarding the level of social interaction that the child had with others when with the father, even if there was some evidence of activities that the father engaged in with the child, the court did not err in finding that "[t]here was little evidence" of interaction with others while the child was with the father, whereas her mother's home is at the center of family activities. The challenged findings regarding the effect that the father's mental state had on the child after his most recent break-up are also supported by competent evidence in the record. The father testified that he took responsibility for "not holding that sadness back" with the child after his break-up, and the mother testified that the child was "very obsessive about her father and how he had been feeling. And she would say often that she was sad because her father's lonely without her, that he's sad when she goes away, and so she worried." Furthermore, the court's reference to the father's demeanor at trial as presenting the appearance of depression does not require diagnostic evidence.

[¶17] With respect to the ultimate determination that there had been a substantial change in circumstances, although the court did not find that sexual

abuse had occurred, it did find substantial changes in the parents' relationships with significant others, in their residences, in the child's schooling, in the level of parental conflict, and—most significantly—in the child's alarming level of distress in response to the existing schedule of contact and the heightened conflict between her parents. Because the circumstances of families do not remain static during litigation, the court acted well within its authority in considering all of the changes affecting the child as of the time of the hearing. The mother alleged that there had been a substantial change due to "[c]ircumstances indicating that my daughter may be the victim of sexual abuse by her father." Many of the circumstances that initially suggested possible abuse, such as the child's increasing depression and the need for crisis intervention, were precisely the circumstances that guided the court's findings regarding the child's needs and her best interest. The court did not err in finding a substantial change in circumstances, even when there was no finding of sexual abuse and the child's change in residence initially occurred partly because of the ultimately unsubstantiated suspicion of sexual abuse.[2] The court's carefully considered findings support the existence of a substantial change in circumstances.

---

[2] The father does not contend that he lacked notice that the court would be considering evidence of circumstances beyond whether sexual abuse was substantiated for purposes of deciding whether to grant the motion to modify. *Cf. Smith v. Hawthorne*, 2002 ME 149, ¶ 11, 804 A.2d 1133 (discussing notice pleading standards).

B.     Review of the Best Interest Determination

[¶18]   Although parents who are focused on their own conflicts may each claim that he or she has a right to equal time with a child, the court's responsibility is to ensure that the child's health and safety are not threatened by the adults' battle for control.  *See* 19-A M.R.S. § 1653(3).  Notwithstanding the court's authority to award shared primary residential care, a court may do so only if such an award is in the best interest of the child.  *See* 19-A M.R.S. § 1653(2)(D)(1) (2015).  Complex, complicated, or convoluted schedules, established to vindicate adults' desires for equal time, may be contrary to a child's needs and ultimately contrary to the best interest of the child.  The court acts appropriately when it considers this factor, among all relevant factors, as it is bound to do by statute.  *See id.* § 1653(2)(D)(1), (3).

[¶19]   The record before us fully supports the court's determination that establishing a primary residence with the mother and modifying the schedule of contact was in the child's best interest because (1) the parents could not avoid conflict; (2) transitions, with the inevitable added conflict, were too frequent; and (3) the child had been affirmatively harmed by the level of parental conflict to which she was exposed through these frequent transitions.  The child's demonstrable and profound need for the security of a primary residence, with the benefit of fewer transitions, especially during the school week, was evident

throughout the record. The court took into account all of the applicable factors and gave priority to the child's safety and well-being as the statute requires, ultimately entering an order that is appropriately focused on the child's best interest. *See id.*

The entry is:

Judgment affirmed.

**On the briefs:**

Stephen C. Smith, Esq., and Caleb J. Gannon, Esq., Lipman & Katz, P.A., Augusta, for appellant Stephen W. Wallace

Timothy J. Kimpton, Esq., Gallagher, Villeneuve and DeGeer, PLLC, Damariscotta, for appellee Erin W. Wallace

Wiscasset District Court docket number FM-2009-36
FOR CLERK REFERENCE ONLY