MAINE SUPREME JUDICIAL COURT                          Reporter of Decisions
Decision:     2019 ME 11
Docket:       And-18-74
Submitted
  On Briefs:  September 26, 2018
Decided:      January 24, 2019

Panel:        SAUFLEY, C.J., and ALEXANDER, MEAD, GORMAN, JABAR, HJELM and HUMPHREY, JJ.
Majority:     SAUFLEY, C.J., and MEAD, GORMAN, JABAR, HJELM and HUMPHREY, JJ.
Concurrence/
  Dissent:    ALEXANDER, J.

TANYA J. MCMAHON

v.

CHRISTOPHER P. MCMAHON

JABAR, J.

[¶1]  Christopher P. McMahon appeals from a judgment of the District

Court (Lewiston, *Ende, J.*) denying his motion for contempt and granting Tanya

J. McMahon's motion to modify a 2010 divorce judgment and the court's order

(*Sparaco, D.C.J.*)[1] denying his motion to alter or amend the judgment and

---

[1]  A judge may not "entertain a motion to alter or amend the judgment, decree or order of another judge of the same court except in extraordinary circumstances such as in the case of the decreeing judge's death, resignation, sickness or other disability." *In re C.P.*, 2016 ME 18, ¶¶ 24-25, 132 A.3d 174 (alterations omitted) (quotation marks omitted); *see also Burrow v. Burrow*, 2014 ME 111, ¶ 26, 100 A.3d 1104.  Here, the judge who issued the judgment on the motion for contempt and motion for modification retired shortly afterward and was not available to act on the post-judgment motions.  The successor judge reviewed the entirety of the record and determined that the record was sufficient for the court to address Christopher's post-judgment motions.  *See In re C.P*, 2016 ME 18, ¶ 28, 132 A.3d 174.

2

granting in part his motion for additional findings of fact and conclusions of law. *See* M.R. Civ. P. 52(b), 59(e).

[¶2]  Christopher argues that the court committed error and abused its discretion by (1) denying his motion for contempt, (2) failing to implement a partial mediation agreement, (3) ordering him to pay attorney and guardian ad litem fees, (4) denying a deviation from the child support guidelines, and (5) imposing conditions on his visitation rights.  Discerning no error or abuse of discretion in the court's actions, we affirm the judgment.

## I.  BACKGROUND

[¶3]  The following facts, all of which are supported by competent evidence, were found by the court.  Because Christopher moved for additional findings of fact pursuant to M.R. Civ. P. 52(b), we do not infer any findings, and consider only the findings and conclusions explicitly rendered by the court. *See Ehret v. Ehret*, 2016 ME 43, ¶ 9, 135 A.3d 101

[¶4]  Christopher and Tanya McMahon, parents of three children now ranging from eleven to eighteen years of age, were divorced through a 2010 judgment entered by the District Court (*Ende, J.*).  The judgment conferred both shared parental rights and shared primary residence for all three children.

Christopher moved to Connecticut in early 2012, but neither party sought to amend the divorce judgment.

[¶5]  Over the next few years, Christopher's relationship with his two eldest children began to deteriorate, in part because of conflicts between the children and his new wife.  In 2016, the youngest child expressed a wish to try school in Connecticut, and Tanya and Christopher began to discuss the possibility of making the move happen.  To this end, Christopher sent a written agreement to Tanya stating that the child would remain with him in Connecticut for the entire school year.  Tanya added additional language stating that the child could move back to Maine without hesitation if the child so desired, and sent a signed copy back to Christopher.  Christopher neither read nor replied to Tanya's version of the agreement, and no further discussions took place.  The child moved to Connecticut later that year.

[¶6]  While the youngest child was in Maine for the holidays in late 2016, Tanya sent a letter to Christopher stating that their "temporary arrangement" had been rescinded, and that the child would remain in Maine.  Concurrently, Tanya filed a motion to modify the 2010 divorce judgment, seeking to provide the sole primary residence for the three children and a recalculation of child support.  In response, Christopher filed a motion for contempt, alleging that

4

Tanya breached the 2010 divorce judgment by relocating the residence of the youngest child without thirty days' notice. Both parties attended mediation in May 2017, which culminated in a partial agreement.

[¶7] The court held a hearing on the parties' motions a half day at a time on three days in late August and early September. Following the hearings, the court granted Tanya's motion to modify the divorce judgment, giving her the right to provide the sole primary residence for all three children. The court denied Christopher's motion for contempt. The court (*Sparaco, D.C.J.*) denied Christopher's subsequent motion to alter or amend and granted in part his motion for additional findings of fact and conclusions of law. Christopher timely appealed. *See* 14 M.R.S. § 1901 (2017); 19-A M.R.S. § 104 (2017); M.R. App. P. 2B(c).

## II. DISCUSSION

### A. Motion for Contempt

[¶8] Christopher first argues that the court erred and abused its discretion by denying his motion for contempt. We review the findings of fact "that form a basis for [the] court's decision regarding civil contempt for clear error." *Lewin v. Skehan*, 2012 ME 31, ¶ 18, 39 A.3d 58. The court's finding is "clearly erroneous when there is no competent evidence in the record to

support it." *Id.* If review of the factual findings reveals no clear error, the court's decision is reviewed for an abuse of discretion. *Id.*

[¶9] "For a court to find a party in contempt, the complaining party must establish by clear and convincing evidence that the alleged contemnor failed or refused to comply with a court order and presently has the ability to comply with that order." *Efstathiou v. Efstathiou*, 2009 ME 107, ¶ 11, 982 A.2d 339. Further, the "court order must inform the person in definite terms what duties the order imposes upon him." *Lewin*, 2012 ME 31, ¶ 19, 39 A.3d 58.

[¶10] Here, Christopher moved to Connecticut following the issuance of the original divorce judgment, making compliance with its shared residence provision all but impossible. Neither party sought to alter that judgment, and the parties' informal agreement about the youngest child's move to Connecticut in 2016 was not an enforceable order. *See Fisco v. Dep't of Human Servs.*, 659 A.2d 274, 275 (Me. 1995) (holding that reliance on an informal agreement between parties as to child support "is unreasonable and unjustifiable" because it frustrates the power of the court); *Ashley v. State*, 642 A.2d 176, 176 (Me. 1994) (same). Accordingly, the court found that both parties shared the responsibility for the sequence of events that transpired; that there was no court order that specified the youngest child's primary residence in light of the

changed circumstances; and therefore, that there was no court order that could have been violated. Because competent evidence in the record supports that determination, it was not an abuse of discretion for the court to deny Christopher's motion for contempt.

B.     Mediated Agreement

[¶11]   Christopher next argues that the court erred when it failed to implement provisions of a mediated partial agreement between him and Tanya regarding his summer contact with their youngest child.   Contrary to Christopher's assertion, "[a] family matter agreement does not become an order of the court until it is presented to and approved by the court." *Cloutier v. Cloutier*, 2003 ME 4, ¶ 8, 814 A.2d 979.  Although "in the normal course, the court should honor an agreement reached by the parties," it may, "acting within its discretion, conclude[] that there is a basis for setting aside an agreement that has not been incorporated in a court order." *Id.* ¶¶ 9-10.  Among other bases, the court may consider "what [effect] the enforcement or setting aside of the agreement would have on the best interests of the children." *Id.* ¶ 11.

[¶12]   The mediated agreement was created three months prior to the final hearing, and during that time, the guardian ad litem expressed her opinion that she did not believe the agreement was in the best interest of the youngest

child. It was well within the court's discretion to examine the mediated agreement in order to determine if it was in the child's best interest and to ultimately find that it was not. *See id.*

C. Attorney and Guardian ad Litem Fees

[¶13] Finally, Christopher contends that it was error for the court to order him to pay a portion of Tanya's attorney fees and to apportion more than half of the guardian ad litem fees to him. Christopher argues that the court erred by finding that he was able to afford such payments. We review the award and apportionment of attorney and guardian ad litem fees for an abuse of discretion. *See McBride v. Worth*, 2018 ME 54, ¶ 20, 184 A.3d 14; *Akers v. Akers*, 2012 ME 75, ¶ 10, 44 A.3d 311.

[¶14] In making its determination, the court found that Christopher made almost twice as much as Tanya and thus was better able to absorb the cost of litigation. *See* 19-A M.R.S. § 1507(7)(A), (E) (2017). The court's finding is based firmly on the financial affidavits that both parties provided to the court. Although Christopher has attempted to introduce new evidence on appeal of an allegedly lower income, we do not "consider new facts, new exhibits or other material relating to the merits of the appeal that was not presented to the trial court and included in the trial court record." *Beane v. Me. Ins. Guar. Ass'n*,

8

2005 ME 104, ¶ 9, 880 A.2d 284.  In relying on the financial information available to it, the court did not abuse its discretion.

[¶15]  Although concurring in all other respects, the dissent would conclude that the court erred by straying from the maximum fee and equal sharing arrangement contemplated in the orders appointing the guardian ad litem.  Dissenting Opinion ¶ 21.  It is important to note, however, that other than Christopher's argument on appeal that he could not afford the payments, he did not raise any issues surrounding the guardian ad litem fees.

[¶16]  In *Teel v. Colson*, we said

The general rule governing proper appellate procedure is that a party who seeks to raise an issue for the first time at the appellate level is held, in legal effect, to have "waived" the issue insofar as he utilizes it to attack a judgment already entered and from which an appeal is taken; therefore, appellate review will be denied to such question.

396 A.2d 529, 533 (Me. 1979) (quoting *Reville v. Reville*, 289 A.2d 695, 697 (Me. 1972)).  To that point, we further stated that

Specifically, proper appellate practice will not allow a party to shift his ground on appeal and come up with new theories after being unsuccessful on the theory presented in the trial court.  It is a well settled universal rule of appellate procedure that a case will not be reviewed by an appellate court on a theory different from that on which it was tried in the court below.

*Id.* at 534.

[¶17]  In this case, the appellant did not challenge the total amount of the guardian ad litem's fees at trial and is not raising any issue regarding the final amount of the guardian ad litem's fees in this appeal.  Nonetheless, the dissent *sua sponte* raises the issue.  Dissenting Opinion ¶¶ 24-43.  Moreover, at the conclusion of the hearing, Christopher's attorney noted that he had reviewed the bill and there was "really no objection [he could] make to it."  Although it is not clear which guardian ad litem bill was being discussed, the record establishes that the guardian submitted an affidavit regarding her fees on September 11, 2017, and the court acted well within its discretion in considering Christopher's litigation strategy and choices as increasing the time required of the guardian ad litem.

[¶18]  In his motion for additional findings and conclusions, Christopher did not question the guardian's total fees as being over the initial cap, nor did he question the uneven allocation.  Finally, on this appeal, other than claiming that he could not afford the attorney and guardian ad litem fees, Christopher has not raised the issue of the guardian's fees being over the initially authorized amount allowed or the uneven allocation of the payment of the guardian's bill.  Although we do not disagree with the principle addressed by the dissent regarding the need for clarity of orders setting the amounts and expectations

of guardian ad litem fees, that issue has not been raised in this appeal. Accordingly, we deem the issue waived. *See id.* at 533-34.

D.     Christopher's Remaining Arguments

[¶19]  Christopher's remaining arguments are also unpersuasive.  It was well within the court's discretion to determine that the several weeks the youngest child spends in his father's care during the summer was an insufficient basis to deviate from the child support guidelines.[2]  *See Wong v. Hawk*, 2012 ME 125, ¶ 17, 55 A.3d 425 (stating that we review the "decision not to deviate from the child support guidelines for an abuse of discretion").

[¶20]   Similarly, it was not an abuse of discretion for the court to determine, based on previous interactions between the two eldest children and Christopher's new wife, that it was in the best interests of the children to impose a condition on Christopher's visitation with them that the stepmother not be present.  *See Jackson v. MacLeod*, 2014 ME 110, ¶ 23, 100 A.3d 484

---

[2]  Christopher also argues that he is entitled to a deviation from the child support guidelines because of the increased cost of transportation related to his contact with the children because of his newly reduced income.  *See* 19-M.R.S. § 2007(3)(P) (2017).  Neither this argument nor evidence of increased costs of transportation and reduced income were presented to the trial court, and they are not part of the record on appeal.  *See Beane v. Me. Ins. Guar. Ass'n*, 2005 ME 104, ¶ 9, 880 A.2d 284. As a result, we do not address this issue.  *See Foster v. Oral Surgery Assocs., P.A.*, 2008 ME 21, ¶ 22, 940 A.2d 1102 ("An issue raised for the first time on appeal is not properly preserved for appellate review.").

("We review a trial court's decision on a motion to modify a divorce judgment for an abuse of discretion or errors of law.").

The entry is:

Judgment affirmed.

---

ALEXANDER, J., concurring in part and dissenting in part.

[¶21] I concur in those portions of the Court's opinion affirming the trial court's determinations regarding parent/child contact, child support, and the allocation of attorney fees. I respectfully dissent from that portion of the Court's opinion affirming the trial court's disregard of the payment caps and equal allocation of payment responsibility for guardian ad litem fees, which were specified in previously agreed-to orders and acknowledged at the hearing.

[¶22] The development of practice in the Family Division over the past two decades has seen increasing numbers of guardian ad litem appointments, usually by magistrates, sometimes by judges, to evaluate families and provide advice to the parties and the court as to resolutions that might serve the best interests of the children involved. In early practice, most guardian ad litem appointment orders included only vague and general guidance as to the tasks

the guardians ad litem were to perform and set no caps on the fees guardians ad litem might charge for their services.

[¶23]  These open-ended orders led to significant abuses, with some guardians ad litem performing tasks unanticipated by the parties and/or seeking payment for fees that sometimes were well beyond parties' ability to pay.  These abuses, particularly to middle-income litigants, were documented in our opinions in *Douglas v. Douglas*, 2012 ME 67, ¶¶ 10-12, 19-28, 43 A.3d 965, and *Desmond v. Desmond*, 2011 ME 57, ¶ 7, 17 A.3d 1234. Following those opinions, the courts adopted form guardian ad litem appointment orders, such as were approved in this case, that (1) required consideration of parties' ability to pay, (2) specified the rates to be charged, (3) set strict caps on payment and hours to be worked, and (4) allocated payment responsibility between the parties.  These orders were supported by rules, adopted in 2015, that confirmed the importance of the fee limitations and payment responsibility allocations set in the form guardian ad litem appointment orders.  Maine Rules for Guardians Ad Litem (Tower, 2018).

[¶24]  Here, the guardian ad litem claimed to have worked hours and sought payment for fees far in excess of the caps set in the appointment orders.

The history of the guardian ad litem's appointment, the payment cap, and the fee sharing arrangement is addressed below.

[¶25] After the competing post-judgment motions at issue in this appeal had been filed, the court entered several orders reflected in the docket entries. One of those orders, entered February 2, 2017 (*Ham-Thompson, M.*), was an expanded appointment order for a guardian ad litem. *See* M.R.G.A.L. 4(a)(3) and 4(b)(4)(D)(iii)(a). Maine Rule for Guardians Ad Litem 4(b)(4)(A) requires that such an appointment order "specify the guardian ad litem's length of appointment; duties, including the filing of a written report . . . ; and fee arrangements, including hourly rates, timing of payments to be made by the parties, and the maximum amount of fees that may be charged for the case without further order of the court."

[¶26] The February 2 order, entered on the standard court guardian ad litem appointment form, complied with M.R.G.A.L. 4(b)(4)(A). The order specified a $120 hourly rate for the guardian ad litem, a 20-hour cap on the guardian ad litem's work, and a maximum amount of fees to be charged of $2,400. The order required that each party pay half of the fees—$1,200. The order also specified that the guardian ad litem would not be expected to travel to Connecticut, where Christopher McMahon resided.

14

[¶27]  Three months later, on May 1, 2017, the court (*Mulhern, J.*), again utilizing the standard court form, amended the original guardian ad litem appointment order particularly to authorize the guardian ad litem to travel to Connecticut.  The order recognized that the guardian ad litem's travel time to and from Connecticut would be compensated at a rate of $50 per hour; extended the cap on the guardian ad litem's hours by ten hours; and expanded the payment obligation for the guardian ad litem's fees by $1,000 for each party. As a result of these amendments, each party's specified total payment obligation became $2,200, with the total fees to be paid to the guardian ad litem to be "no more than" $4,400.

[¶28]  The case file includes a brief order of the court (*Ende, J.*) purporting to amend the May 1 guardian ad litem appointment order to remove the Connecticut travel authorization and to direct the guardian ad litem to call one of the children in Connecticut twice before August 1, 2017.  That order, dated August 31, 2017, also included a notation by the court (*Ende, J.*) dated September 1, 2017, stating, "vacated as moot when signed."  Neither the August 31 amendment order nor the September 1 order vacating the August 31 order as moot is reflected anywhere in the docket entries.

[¶29] September 1, 2017, was the last day of the court's hearing on the various motions. At that hearing, the court, the guardian ad litem, and the parties discussed payments due the guardian ad litem. The guardian ad litem noted that she had not traveled to Connecticut as anticipated by the May 1 amended appointment order. The guardian ad litem then said that "the day one bill goes through last Friday." Whatever document was referenced was not marked as an exhibit. The guardian ad litem then referenced the appointment orders: "I think that they were of $2,400 total with the parties each paying half. No, 4,800 total, right, because they were each 24, is that right?"

[¶30] After the guardian ad litem expressed confusion as to the amounts authorized in the appointment orders, Christopher McMahon's counsel offered, "I can make this probably simple. . . . I've reviewed the bill. And there's really no objection I can make to it." The payment cap in the final appointment order was $4,400, not $4,800 as referenced by the guardian ad litem.

[¶31] The transcript includes no suggestion by the guardian ad litem that she was seeking payments in excess of the payment cap set in the May 1 order, no justification offered for payments in excess of the cap, and an express acknowledgement by the guardian ad litem that the parties are "each paying half." The September 1 on-the-record discussion certainly could not have

referenced the guardian ad litem's bill submitted to the court around September 11, 2017, as the Court's opinion suggests. Court's Opinion ¶ 17.

[¶32] Following discussion of the amount due, the court, apparently not having referenced the appointment orders or heard the guardian ad litem's "each paying half" testimony, asked, "is there an agreement as to how to split it?" Counsel for Tanya McMahon then observed, "It is—I think—is subject to reallocation, isn't it?" After the court asked, "Do the parties intend to be subject to reallocation?" counsel for Christopher McMahon observed, "I don't remember. I'll just let the order speak for itself." Counsel's statement indicated his view that the agreed-to order providing for the equal sharing of costs remained in effect. The guardian ad litem then observed that "mom has paid more" and that "I'd like to get paid . . . I'm willing to talk to the parties about this, what's owed." Counsel for Christopher McMahon then responded, "So we understand. An additional submission may be made."

[¶33] No additional filings or submissions are referenced in the docket entries, and no other actions or amendments to the guardian ad litem appointment orders appear in the file prior to the court's November 13, 2017, order that is the subject of this appeal. Thus, as of the time the court rendered its decision, the outstanding and effective guardian ad litem appointment

orders, pursuant to M.R.G.A.L. 4(b)(4)(A), specified a maximum fee that may be charged without further order of the court of $4,400 and specified that each party pay a total of $2,200 toward the guardian ad litem fees.

[¶34] Disregarding the governing guardian ad litem appointment orders, the court's final order authorized total payments to the guardian ad litem of $7,974.71, nearly $3,600 in excess of the final spending cap set in accordance with the Rule 4(b)(4)(A) and more than triple the $2,400 spending cap agreed to before the amendment that contemplated the travel to Connecticut that ultimately did not occur. The final order directed Christopher McMahon to pay the guardian ad litem over $3,400 in addition to the $1,700 that the court recognized that Christopher McMahon had already paid to the guardian ad litem. That final order effectively set aside the agreement for equal sharing of costs in the original guardian ad litem appointment orders and required that Christopher McMahon pay approximately $2,900 more than the cap of $2,200 on his payments set in the May 1, 2017, amended order.

[¶35] Neither the court's findings nor the record contains any justification for the guardian ad litem to perform work in excess of the thirty hours specified in the guardian ad litem appointment orders or to charge fees in excess of the total of $4,400 authorized in the amended guardian ad litem

appointment order. In fact, because the guardian ad litem did not travel to Connecticut, as contemplated by the May 1, 2017, amended order, there is a serious question as to whether there was authority to exceed the $2,400 cap set in the original guardian ad litem appointment order before the change authorizing travel to Connecticut. However, for purposes of this opinion, we can assume that the hours cap of thirty hours and the fees cap of $4,400 govern the work authorized and payments that can be approved for the guardian ad litem. At the hearing, Christopher McMahon's counsel acknowledged and agreed to the $4,400 or $4,800 payment obligation with "each paying half."

[¶36] Without providing the parties with notice or an opportunity to be heard, or any findings justifying its actions, the final court order disregarded the earlier orders setting limits on the work authorized and payments to the guardian ad litem. The final order, in effect, signified a return to the abusive, open-ended guardian ad litem fee-setting practices that prevailed prior to the *Douglas* and *Desmond* opinions and the reforms that followed those opinions.

[¶37] The Court's opinion, addressing the issues on appeal, states that "Christopher contends that it was error for the court to order him to pay a portion of Tanya's attorney fees and to apportion more than half of the guardian ad litem fees to him. Christopher argues that the court erred by finding that he

was able to afford such payments." Court's Opinion ¶ 13. Despite recognizing that the guardian ad litem's excessive fee request was not submitted until ten days after trial, the Court supports its decision by asserting that "the appellant did not challenge the total amount of the guardian ad litem's fees at trial and is not raising any issue regarding the final amount of the guardian ad litem's fees in this appeal. Nonetheless, the dissent *sua sponte* raises the issue." Court's Opinion ¶ 17.

[¶38] Christopher McMahon is unrepresented in this appeal. During the hearing, McMahon's then-counsel and the guardian ad litem recognized the continuing existence of the $4,400 or $4,800 payment cap and the continuing validity of the agreed equal fee-sharing arrangement. The concern in this opinion is the trial court's *sua sponte* act, without any on-the-record request from the guardian ad litem and without specific findings supporting its unilateral action, altering the fee cap and fee sharing arrangement acknowledged by the guardian ad litem at hearing.

[¶39] Christopher McMahon sufficiently preserved for appeal his objections to the payment mandate in his appeal documents by generally objecting to the guardian ad litem's payment mandate, when the general

objection is combined with his then-counsel's and the guardian's statements on the last day of the hearing.

[¶40]  Even if the appeal filing and the on-the-record statements are viewed as insufficient to preserve objections to the disregard of the negotiated cap and equal sharing agreement, the trial court's disregard of the orders setting payment caps and specifying the fee sharing arrangement, without providing the parties with notice and an opportunity to be heard, constitutes obvious error.

[¶41]  We have held that for us to vacate a judgment based on the obvious error standard of review, "there must be (1) an error, (2) that is plain, and (3) that affects substantial rights"; if those conditions are met, we have indicated that we will exercise our discretion to notice an unpreserved error if we also conclude that (4) the error seriously affects the fairness and integrity or public reputation of the judicial proceedings.  *State v. Fahnley*, 2015 ME 82, ¶ 15, 119 A.3d 727; *accord Truman v. Browne*, 2001 ME 182, ¶ 12, 788 A.2d 168; *Morey v. Stratton,* 2000 ME 147, ¶¶ 10 & n.3, 11, 756 A.2d 496; *Scott v. Lipman & Katz, P.A.,* 648 A.2d 969, 974-75 (Me. 1994) (applying obvious error review in civil cases).

[¶42]  The trial court's disregard of the previously agreed to and court approved payment caps and fee sharing arrangement, requiring Christopher McMahon to pay more than double his agreed-to commitment without advance notice and opportunity to be heard and without findings justifying rejection of the prior agreed to orders, meets our criteria to vacate due to obvious error. With the past problems that had afflicted guardian ad litem fee-setting and collection practices, problems that the Court had adopted orders and rules to correct, the trial court should not have allowed the guardian ad litem to invite it to return to the past, discredited fee assessment and collection practices.

[¶43]  I would vacate the portion of the trial court's judgment regarding approval of guardian ad litem fees and imposition of payment obligations on Christopher McMahon and remand with direction that the guardian ad litem appointment order's limitation on payments of $4,400 with equal sharing of payment obligation by the parties be enforced.  With this change, Christopher McMahon would be obligated to pay $500 in addition to the $1,700 that the final order recognized he had already paid toward the guardian ad litem fees.

22

Christopher P. McMahon, appellant pro se

Sarah C. Mitchell, Esq., and Amy Dieterich, Esq., Skelton Taintor & Abbott, Auburn, for appellee Tanya J. McMahon

Lewiston District Court docket number FM-2009-782
FOR CLERK REFERENCE ONLY